[Crim. No. 10093.   Second Dist., Div. Four.   Feb. 16, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JANET PHILLIPS et al., Defendants and Appellants.

Maxwell S. Keith, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—In an information filed by the District Attorney of Los Angeles County, defendants William Ross Phillips and Janet Phillips, and codefendant Berna G. Oliver, were charged in Counts I, III, IX, and X with a violation of section 476a of the Penal Code (issuing checks without sufficient funds), and in Counts II, IV, V, VI, VII, VIII, and XI with the crime of grand theft. In Count XII, the Phillipses and Oliver were charged with the crime of conspiracy to commit grand theft. In addition, three prior felonies were alleged against William Phillips.

Motions under Penal Code section 995 were denied as to the two Phillipses; as to codefendant Oliver it was denied as to Counts IV, X, XI, and XII, and granted as to Counts I-III and V-IX. Defendants pled "Not Guilty." William Phillips admitted two of the priors, and the third was stricken on motion of the People.

After both sides had rested, William Phillips and Janet Phillips moved for an advisory verdict of acquittal as to Counts V, VII and IX; the motion was denied. On motion of the People, Count IV was dismissed as to codefendant Oliver.

The jury found defendant William Phillips guilty on all counts; defendant Janet Phillips was found guilty on Counts X, XI and XII and not guilty on Counts I-IX; codefendant Oliver was found guilty on the three counts (X, XI and XII) submitted as to him. All defendants moved for a new

trial; as to defendants William and Janet Phillips, the motions were denied.[1]

As to defendant Janet Phillips the proceedings were suspended and she was granted probation for three years. As to defendant William Phillips, probation was denied; Counts II and VII were merged with Count I, Counts IV, V, VI, VIII and IX were merged with Count III, and Counts XI and XII were merged with Count X; he was sentenced to state prison, the sentences on merged Counts I and III were ordered to run consecutively with each other; the sentence on merged Count X was ordered to run concurrently with the sentences on merged Counts I and III; all three sentences were ordered to run concurrently with any other sentence, state or federal.

Defendants William Phillips and Janet Phillips filed notices of appeal from the judgments.[2]

In view of the nature of the contentions raised on this appeal, we need not set out the details of the various offenses; they followed the typical pattern of check "kiting" schemes, involving the deposit of checks on bank accounts which were insufficient, and then withdrawing the monies so deposited before the checks forming the basis of the new account could clear. There is evidence that the scheme was facilitated by the assistance of a confederate working in the Los Angeles Clearing House. As to certain of the transactions, Phillips and his wife used the services of Darrell Atkins and of codefendant Oliver. Both Atkins and Oliver testified at the trial in a manner which implicated the Phillipses.

Laskey, Atkins' roommate, testified that he sold a typewriter to William Phillips. He also claimed that Atkins asked him, as a favor, to deposit in Atkins' account a check for $22,000. Laskey at first refused, then he agreed, then changed his mind and tore up the check. In a telephone conversation Mrs. Phillips said it was important that the check went in. Mr. Laskey knew that what Atkins and Phillips were doing was either against the law or unorthodox, and he formed the idea that their business was a fictitious one after he got the $22,000 check.

Officer Furriel, on January 15, 1963, arrested defendant

[1]Defendant Oliver's case is not before us and the present record does not disclose what disposition was made thereof.

[2]We treat defendant Janet Phillips' notice as being from the order granting probation (Pen. Code, § 1237, subd. 1).

William Phillips. The following day, January 16, 1963, Officer Furriel arrested Mrs. Phillips and searched her apartment without an arrest warrant or a search warrant. He had first seen a piece of clear, torn-up plastic in a trash can on the service porch. The officer had received information from both Darrell Atkins, who had been under arrest for issuing checks without sufficient funds, and also from Berna G. Oliver, about the check-kiting scheme and Mrs. Phillips' part in it. He was also informed that the checks had not been honored by bank officers. The officers knocked on Mrs. Phillips' door, which swung open 12 to 14 inches, and the officers said, "Police Officers." When the officers walked in Mrs. Phillips got up from the couch and tried to close the door before they could enter. The officers found some typewritten notations in the trash container that were later admitted as evidence.

Defendants contend that the court erred: (1) in not instructing the jury that Guy Laskey was an accomplice as a matter of law; (2) in not instructing the jury that, if it found codefendant Oliver to be an accomplice, his testimony required corroboration; (3) in admitting into evidence a handwriting exemplar; (4) in admitting into evidence items discovered by search of defendants' home and (5) in commenting on defendants' failure to testify.

I

██ Although admitting that the trial court could not properly have instructed the jury that Oliver was an accomplice as a matter of law—since this was not a case such as *People* v. *Catlin* (1959) 169 Cal.App.2d 247 [337 P.2d 113], where a codefendant's testimony amounted to a judicial confession — defendants contend that the court should have instructed that, if it found Oliver to be an accomplice, his testimony required corroboration.[3] However, the jury was instructed generally as to the definition of an accomplice and was given a general instruction on the weight to be given an accomplice's testimony and the necessity of corroboration. Since the jury found Oliver to be guilty, it is to be presumed that they took into account, in weighing his testimony against defendants, the general instruction. (*People* v. *Luker* (1965) 63 Cal.2d 464, 472 [42 Cal.Rptr. 209, 407 P.2d 9].)

[3]We recently have held that, where a codefendant testifies on his own behalf, and not as a witness for the People, the instruction that that testimony should be viewed with distrust was properly omitted. (*People* v. *Gurule* (1965) 236 Cal.App.2d 847, 854-855 [46 Cal.Rptr. 459].)

## II

■ It is contended that the trial judge should have instructed the jury that Guy Laskey, a witness for the People, was an accomplice as a matter of law. The evidence is equivocal as to whether Laskey was a member of the conspiracy. He was aware of the identity of the conspirators, his typewriter was used in furtherance of the conspiracy, his automobile was used by Atkins in contacting Janet Phillips, he agreed to deposit a check written by Atkins, and he later tore up the check and bankbook. Laskey testified that he knew what was going on was either unlawful or unorthodox, but it was not certain that Atkins knew the check was false.

■ To be an accomplice one must knowingly, voluntarily, and with common intent unite with the principal offender in the commission of the crime. In *People* v. *Duncan* (1960) 53 Cal.2d 803 [3 Cal.Rptr. 351, 350 P.2d 103], defendant asked if Mrs. Esquivel would help her "get rid" of the victim. Mrs. Esquivel said there were some boys, but didn't know if they would talk to defendant. The next day Mrs. Esquivel introduced defendant to two men who later committed the crime. Mrs. Esquivel testified that she did not believe defendant wished to find someone who would "get rid" of Olga. The trial court refused to give an instruction that Mrs. Esquivel was an accomplice. The appellate court held that it was a question of fact whether Mrs. Esquivel had guilty knowledge and intent necessary to make her an accomplice, and the court stated that the trial court did not err in refusing to instruct the jury as a matter of law that she was an accomplice.

■ Since Laskey, in the case before the court, testified that, although he was suspicious, he did not know of the check's invalidity, it was a question of fact as to whether Laskey was an accomplice. There was no error.

## III

■ Defendants next contend that it was error to admit into evidence items found at the home of Mrs. Phillips, because the officers failed to comply with Penal Code sections 841 and 844. The officers did not state their authority and purpose, and therefore, according to defendants, the evidence should have been excluded. (*Miller* v. *United States* (1958) 357 U.S. 301 [78 S.Ct. 1190, 2 L.Ed.2d 1332].)

It is clear that the arrest of Mrs. Phillips was lawful. An arrest by an officer without a warrant is lawful when a person arrested has committed a felony, although not in his

presence, or whenever the officer has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed. (Pen. Code, § 836, subds. 2 and 3.) In the instant case the officers had sufficient evidence to believe that Mrs. Phillips committed a felony. Both Atkins and Oliver had fully implicated Mrs. Phillips in the check cashing conspiracy, and the officers knew that checks had been dishonored.

A search may be made incident to an arrest without a warrant. (*People* v. *Privett* (1961) 55 Cal.2d 698 [12 Cal. Rptr. 874, 361 P.2d 602].) A reasonable search and seizure, based on probable cause, may be made in the absence of a search warrant, even though there is ample time for the officer to get one. (*People* v. *Winston* (1956) 46 Cal.2d 151 [293 P.2d 40].)

It is true that the officers did not fully comply with the explanation required by Penal Code section 844. When the arresting officer knocked on the door, and it swung open, the officer stated "Police officers" and saw Mrs. Phillips on the couch. Mrs. Phillips then got up and tried to close the door to prevent the officers from entering. The officers then entered, arrested Mrs. Phillips, and made the search.

In *People* v. *Maddox* (1956) 46 Cal.2d 301, 306-307 [294 P.2d 6], it was stated that Penal Code section 844 need not be complied with if the officer's peril is increased or the arrest would be frustrated. It was said: "We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

*People* v. *Manriquez* (1965) 231 Cal.App.2d 725 [42 Cal. Rptr. 157], held that the demand and explanation required by section 844 need not be followed where the evidence was the kind susceptible of destruction in a matter of seconds such as narcotics or marked money. Since, in the case before this court, the checks and pages in bank books could have been easily destroyed by Mrs. Phillips, the officers could safely yield to practical necessity. When Mrs. Phillips attempted to close the door after the officers announced that they were police officers, the police officers could reasonably believe that she might attempt to destroy the evidence, thus making their compliance with Penal Code section 844 unnecessary.

204

## IV

■ The next contention is that the trial court erred in admitting into evidence a handwriting exemplar of defendant William Phillips obtained by the police without advising him of his constitutional rights to remain silent and to consult an attorney, citing the holding in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We need not decide here whether or not the *Escobedo-Dorado* rule applies to anything other than oral statements. At the most, a handwriting exemplar is an admission and not a confession and the use of admissions obtained in violation of *Dorado* require a reversal only where the error was prejudicial. (*People* v. *Hillery* (1965) 62 Cal.2d 692, 712-713 [44 Cal.Rptr. 30, 401 P.2d 382].) In the instant case, William Phillips' part in the scheme was proved not only by the testimony of Atkins and Oliver but by the testimony of various bank employees with whom he had dealt. The use of the exemplar of his handwriting was merely cumulative and not prejudicial.

## V

■ Finally, it is contended that prejudicial error occurred when the prosecutor made reference to the fact that neither William nor Janet Phillips had testified and when the trial court instructed on that point.[4]

It was held in *Griffin* v. *California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], that comment on defendant's failure to testify violated the Fifth Amendment as made applicable to the states by the Fourteenth Amendment. In *People* v. *Bostick* (1965) 62 Cal.2d 820, 823-827 [44 Cal.Rptr. 649, 402 P.2d 529], it was held that, although commenting on a defendant's failure to testify is error, such error does not automatically require reversal, since article VI, section 4½ of the California Constitution is applicable.

The evidence of Mr. and Mrs. Phillips' guilt is clear and convincing. It is improbable that the result would have been different if the prosecution had not made this error.

The judgment and the order granting probation are affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 13, 1966.

[4]The trial court instructed the jury on defendants' failure to testify in conformance with CALJIC Nos. 50 and 51.