[Crim. No. 275. Fifth Dist. Jan. 18, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CIRILO CALDERON GARAY, Defendant and Appellant.

Cirilo Calderon Garay, in pro. per., and James V. Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Christopher Longaker, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—On December 3, 1965, defendant was residing in the Grand Central Hotel in the City of Fresno. On that day hotel employee Barbara White, while cleaning his room, observed numerous items of men's clothing from which the price tags had not been removed. Suspicious of illegal activity, she reported her observations to Miss Dennis, the hotel manager, who also inspected the room. Miss Dennis then called the police and informed them of what she and the maid had seen. Later that afternoon, between 6 and 7 p.m., two police officers came to the hotel and were again told by Miss Dennis what had been observed in defendant's room. She then escorted the police to the room and opened the door. The police officers, without entering the room, apparently viewed the suspicious items from the hallway.

Thereafter, on the same evening, Officers Wood and Lopez were assigned to stake-out two subjects (the defendant and one Manuel Espinosa) at the Grand Central Hotel for the

possibility of shoplifting. They arrived at the hotel sometime between 8 and 9 p.m. but the stake-out that evening was uneventful. They resumed the stake-out the next day, Saturday, December 4, with Wood positioned outside the hotel and Lopez inside. Defendant was observed by the officers four different times, leaving and returning to the hotel on Saturday afternoon. He was dressed in dark trousers and a dark trench coat. Each time he left the hotel the coat was unbuttoned and open and his hands were at his sides. Moreover, each time he returned to the hotel the trench coat was buttoned and bulging at the top, and his hands were in his pockets, apparently holding something under the coat.

At about 8 p.m. on December 4, Detective Coop joined Officers Wood and Lopez at the hotel for the purpose of assisting in the arrest of the defendant. The defendant and a companion, Manuel Espinosa, had just returned to their room when Officer Lopez went to knock on the door. Prior to knocking Officer Lopez overheard the defendant and his companion relating to each other what they had just stolen. Appellant said, ''look at the shirts I just stole.'' Lopez then knocked on the door and in response to an inquiry from within replied, in Spanish, that it was Johnny (Officer Lopez' true name). When defendant opened the door he was advised that he was under arrest and advised of his constitutional rights. A search of the room revealed numerous items of men's clothing—sweaters, ties, coats, sport coats and untailored slacks—all with the price tags still attached. On top of the dresser was a jeweler's display case with rings in it. Two wrist watches were also found in the pocket of a sport coat. They were still in their display stands and the price tags were attached.

The defendant was ultimately convicted of stealing the two wrist watches. These watches had not been seen by the hotel employees or by the officers who looked into the room on December 3. As a matter of fact, they had been stolen from a window display of Carter's Jewelry Store on Friday afternoon between 5 and 5:45 p.m., after Miss Dennis had called the police but before the two police officers arrived at the hotel. In the meantime the defendant had returned to the room for a short stay and it is possible that the watches were already in the room when the officers looked in.

Defendant does not (nor could he successfully) contend that the evidence admitted at the trial is insufficient to sustain his conviction. In fact, only two questions are presented in this appeal. First, were defendant's arrest and the search

incidental thereto on December 4 per se lawful? And, second, was the evidence abduced from the final search tainted by a prior unlawful search?

1) We agree with respondent's contention that defendant's arrest, standing by itself, was lawful, and that therefore the search of his hotel room was proper, although accomplished without a search warrant. Under Penal Code section 836 "A peace officer may make an arrest . . . without a warrant . . . [w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, . . ."

■ Moreover, under this section the test as to whether reasonable cause exists is not whether the evidence from which the officer acts in making the arrest is sufficient to convict, but only whether the person arrested should stand trial. (*People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79] ; *People* v. *Hanamoto*, 234 Cal.App.2d 6 [44 Cal.Rptr. 153].)

■ In the instant case the arresting officers were armed with information that there were numerous items of wearing apparel in the defendant's room with the price tags still attached thereto, suggesting possible criminal activity. On four separate occasions on the afternoon prior to the arrest, the officers observed defendant as he left his room at the Grand Central Hotel and proceeded toward the shopping center on the mall. Within a short time after each departure (10 to 45 minutes) they observed him as he returned from this area and went to his hotel room. On each trip defendant would leave the hotel wearing his long trench coat unbuttoned, with his hands at his sides. On each return defendant's coat was buttoned and the coat was bulging at the top, and his hands were in his pockets, apparently holding something under the coat. Immediately prior to the arrest Officer Lopez overheard the defendant and his companion, Manuel Espinosa, discussing what they had stolen. He even heard defendant admit that he had just stolen some shirts. Thus, it is clear that the arresting officers acted as reasonable, cautious and prudent officers; they entertained a strong suspicion that a felony had been committed by defendant, and they had reasonable cause to arrest him. (*Henry* v. *United States*, 361 U.S. 98 [4 L.Ed.2d 134, 80 S.Ct. 168] ; *Rodgers* v. *United States*, 267 F.2d 79; *People* v. *Ingle, supra*, 53 Cal.2d 407; *People* v. *Swayze*, 220 Cal.App.2d 476 [34 Cal.Rptr. 5].) ■ Having made a lawful arrest, the search was also proper and lawful for it is well established that a search incident to a lawful arrest is valid

without a search warrant. (*United States* v. *Rabinowitz*, 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430]; *People* v. *Ingle, supra,* 53 Cal.2d 407; *People* v. *Phillips,* 240 Cal.App.2d 197 [49 Cal.Rptr. 480].)

██ 2) We also agree with respondent's contention that defendant's arrest and the search incidental thereto on December 4 were not the fruit of a prior unlawful search. As a matter of fact, we do not even find it necessary to decide whether the view taken of defendant's room on December 3 by the officers who were standing in the hallway when Miss Dennis opened the door constituted a search, and if so whether it was unlawful, thereby tainting the evidence abduced by the arresting officers on the following day. This follows because the evidence which caused defendant's arrest was obtained by the police officers as the result of a separate and independent stake-out, and through defendant's activities and statements which all transpired after his room had been viewed. ██ The fruit of the poisonous tree doctrine as enunciated in *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], and reiterated in *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921], does not apply to facts which, although actually discovered by a process initiated by an unlawful search, were independently obtained from a source sufficiently distinguishable to be free of the taint of illegality. (*United States* v. *Avila,* 227 F. Supp. 3; *United States* v. *Rutheiser,* 203 F. Supp. 891.) ██ To hold otherwise in a case such as this would be to clothe a criminal with immunity against prosecution for *continued* criminal activity, simply because the police originally became aware of his criminal activity through an unlawful search.

Furthermore, only evidence which is the product of an unlawful search is inadmissible. In this case, even if it is assumed *arguendo* that the officers who looked into the defendant's room committed an unlawful search, it cannot be said that the stake-out which uncovered the evidence leading to defendant's arrest was necessarily the result of this search. ██ That is, the officers who looked into defendant's room were already supplied with information (lawfully obtained)[1] that there were many items of wearing apparel in

---

[1] In *People* v. *Rightnour,* 243 Cal.App.2d 663, 668 [52 Cal.Rptr. 654], the court stated: ''. . . A tenant at a hotel is accorded the constitutional right to be free from illegal searches and seizures. (*Stoner* v. *California,* 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889].) But, with admirable prescience it has also been said in *United States* v. *Jeffers,* 342

defendant's room with the price tags still attached thereto, indicating criminal activity. ▆▆ Thus, the information which was obtained by the officers who looked into defendant's room was exactly the same as the information independently obtained from the maid and the hotel manager. From this it is reasonably clear that what the officers observed in the room was not the sole reason for the stake-out. To the contrary, it seems certain that the stake-out would have been ordered anyway.

For the foregoing reasons the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 29, 1967.

U.S. 48, 51 [96 L.Ed. 59, 72 S.Ct. 93], that 'The law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors or repairmen in the performance of their duties.' . . .''