[Civ. No. 34858. Second Dist., Div. Two. Jan. 20, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LINDA FAY YORK et al., Real Parties in Interest.

650

## Counsel

Evelle J. Younger, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Richard S. Buckley, Public Defender, James L. McCormick and James P. Higginbotham, Deputy Public Defenders, and Sorrell Trope for Real Parties in Interest.

## OPINION

**ALARCON, J. pro tem.**\*—The People seek a writ of mandate to require the respondent Superior Court of Los Angeles County to vacate its order made pursuant to Penal Code section 1538.5 granting the motion of the real parties in interest (hereinafter referred to as defendants) to suppress evidence identified at the preliminary hearing as People's exhibits 1 through 5.

### FACTS

On November 7, 1968, Police Officer Neal Porter of the Covina Police Department received a telephone call from the landlord of an apartment building located on West Front Street in the City of Covina. In response to the call the officer went to the office of Linda Wilson, the apartment manager. Mrs. Wilson told him that "they were evicting Mr. and Mrs. York from their apartment for being one and a half months late on their rent. . . . while they were evicting—while they were moving the property out, they had found a bowl containing what she thought was marijuana, . . ."

Mrs. Wilson invited the officer to enter the apartment "to take a look." Acting upon the apartment manager's express invitation, Officer Porter entered the apartment with Mrs. Wilson. Inside an open hall cupboard Officer Porter saw a bowl containing 27 plastic bags of green leafy material resembling marijuana. In addition Officer Porter observed a water pipe used for smoking, a sifter sitting on top of a glass bowl, a bag containing rubber bands, an empty bag, a packet of brown material, and some green tablets. These items were seized.

At the time Officer Porter entered the apartment all the furniture and furnishings had been removed except for a television set and a figurine which belonged to Mr. and Mrs. York. The bedroom closet was full of clothes. Apartment 17 was rented to Linda York and Dale York on June 20, 1968, on a month to month basis starting June 21, 1968, at the rate of $135 a month. The last payment was made in September. No payment was received for the month of October or the first seven days of November. The apartment was rented as a furnished apartment. Mrs. Wilson moved the furniture out of apartment 17 because it was needed for one of the other apartments which had been rented as furnished.

Mrs. Wilson testified that an "eviction" notice was given to Mr. and Mrs. York. The district attorney attempted to elicit further testimony concerning the nature of the "eviction" notice. However upon objection by counsel "to this line of questioning" on the grounds that "All this information

---

\*Assigned by the Chairman of the Judicial Council.

about notice to pay rent or quit is pretty immaterial," the magistrate precluded further questioning concerning the nature of the document served on Mr. and Mrs. York.[1]

Prior to entering the apartment Officer Porter was not shown a "right of possession" nor any "legal papers."

In granting the motion to suppress the respondent court found as a matter of law that the apartment manager did not have lawful authority to consent to the entry of Officer Porter into the apartment. In addition, the respondent court found that "reliance upon apparent authority is lacking here" because of the fact that "this field is well known . . . I fail to see where officers would not know of the regular process of evicting tenants."

The respondent court's decision to grant the motion to suppress was based on its determination of the existing law and not the "credibility of witnesses."[2]

## PEOPLE'S CONTENTIONS

1. The People contend that the respondent court's holding that Officer Porter had actual knowledge that the landlord had no actual or apparent authority to consent to an entry to look because the officer knew that the tenancy had been illegally terminated is unsupported by the evidence.

2. The owner of an apartment (or his agent) may consent to the entry of an apartment illegally repossessed by the owner.

## DISCUSSION

*The Evidence is Insufficient to Show That Officer Porter had Actual Knowledge That the Eviction was Unlawful*

No evidence was presented from which an inference can be drawn

---

[1] By stipulation, the trial judge based his determination of the facts in support of his order upon the testimony set forth in the transcript of the preliminary hearing.

[2] In summarizing the basis for his decision the trial judge stated: "Once the apartment dwellers, the tenants are in actual occupancy, they can only be evicted by legal process, which was not employed here; but Mr. Poirier [the prosecutor] speaks of apparent authority, and there are cases where apparent authority sometimes takes the place of actual authority; but I am persuaded by Mr. Trope [Defense Counsel for Dale York] that this field is well-known, and reliance upon apparent authority is lacking here.

"I fail to see where officers would not know of the regular process of evicting tenants, and I would say that there was no actual reliance; . . ." In order to clarify the foregoing statement the prosecutor asked the trial judge to "state whether the decision is based on the law or any credibility problems of the witnesses?" The trial judge replied "No, strictly on the law. There are no crediblity problems here, and I am relying on the briefs of Mr. Trope and the cases of *Stoner* vs. *California,* and, as cited by him, also *McDonald* vs. *United States* and *Chapman* vs. *United States,* and I rely upon those authorties."

that Officer Porter had actual knowledge or that he should have known of the unlawful nature of the eviction of Mr. and Mrs. York from their apartment. No questions were asked of Officer Porter as to his understanding of the law and the rights of a tenant faced with eviction for nonpayment of rent. Nor was it established by either side that Officer Porter did not believe that the landlord had the authority to grant consent to the entry of the apartment "to take a look." The only evidence presented to the respondent trial court concerning Officer Porter's knowledge of the eviction was the statement of Mrs. Wilson to Officer Porter that Mr. and Mrs. York were being evicted. From the facts before us, we can find no evidence of any statement to the officer from which he could draw an inference that the landlord had wrongfully evicted his tenants. Officer Porter was not given any information as to what legal steps, if any, had been completed by the landlord to effect a *de jure* eviction. Before he entered the apartment he had been made aware of facts which were the basis of a good faith and reasonable belief on the part of any prudent person that a *de facto* eviction had already occurred and possession of the vacated premises had been relinquished to the landlord. We have not been cited any case which requires the police to challenge the right of a person granting consent to enter or to conduct a record search to determine the extent of the property interest possessed by the person asserting a right to give consent to enter. "Reason and common sense would indicate that if citizens are going to rely on police officers to protect their property, it is not necessary for the police to file a quiet title suit to ascertain ownership whenever a property owner calls police by telephone to check on his property. All that is required is a reasonable good faith belief that the caller had the authority to consent to enter." (*People* v. *Ortiz*, 276 Cal.App.2d 1, 4 [80 Cal.Rptr. 469].)

*Was the Landlords' Consent Effective Under*
*Fourth Amendment Standards*

The facts of this case present a unique problem in the law of consent searches.

The question raised by these facts may be phrased as follows: Is consent to the entry of a furnished apartment granted by the landlord thereof effective so as to make a search warrant unnecessary where the landlord has "evicted" the tenant by removing the furniture in the absence of evidence that the landlord had first obtained a court order permitting the landlord to recover possession?

■ A search warrant is not required by the Fourth Amendment where voluntary consent to enter and search has been given to the police by a person who is in actual exclusive control of the premises. (*Zap* v. *United States,* 328 U.S. 624, 628 [90 L.Ed. 1477, 1481, 66 S.Ct. 1277]; *Davis* v. *United States,* 328 U.S. 582, 593-594 [90 L.Ed. 1453, 1460-1461, 66 S.Ct. 1256]; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) ■ A person who has joint control of the premises may consent to an entry and search although the person whose property is seized and who also has joint control of the *premises* is not asked for his consent. (See *People* v. *McGrew,* 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1]; *People* v. *Linke,* 265 Cal.App.2d 297, 315 [68 Cal.Rptr. 71]; *People* v. *Garner,* 234 Cal.App.2d 212, 230 [44 Cal.Rptr. 217].) ■ Where the person who purports to give consent to enter and search has retained only a limited right to enter for a specific purpose he cannot lawfully grant consent for purposes which go beyond his own limited rights. For example, hotel employees have the implied permission of a guest to enter a rented room for janitorial or maid services. (See *United States* v. *Jeffers,* 342 U.S. 48 [96 L.Ed. 59, 72 S.Ct. 93]. However, hotel employees cannot enter to search the personal effects of the tenant for contraband nor do they have the implied permission of the hotel guest to grant consent to the police to enter for such a search. (See *People* v. *McGrew,* 1 Cal.3d 404, 413 [82 Cal.Rptr. 473, 462 P.2d 1].)

■ Consent to search and enter may be sufficient to obviate the requirement of a search warrant in the absence of actual authority to grant consent based on exclusive or joint control of the premises where (a) the person purporting to grant consent to the police believes he has *unlimited* exclusive or joint control *over the premises* and (b) the police, under the circumstances, reasonably and in good faith believe that such person has the authority to consent to such entry and search. (*People* v. *Burke,* 208 Cal.App.2d 149, 159 [24 Cal.Rptr. 912]; *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 608 [21 Cal.Rptr. 552, 371 P.2d 288].)

Under the facts before us there was no proof of express or implied consent by the defendants to the police to enter and search. Nor was there any evidence that the defendants had expressly or impliedly granted permission to the landlord to enter and search the premises for contraband during the time the defendants had actual or constructive possession of the premises. Therefore we must decide whether the landlord had the authority to grant consent to the police to enter the apartment "to take a look" in the absence of any express or implied permission from Mr. and Mrs. York.

We have not been offered, nor has our research developed any analogous

case precedent involving consent to enter to seize contraband previously discovered by a landlord during the physical eviction of a tenant for non-payment of rent.

In *Chapman* v. *United States*, 365 U.S. 610, 616-618 [5 L.Ed.2d 828, 833-834, 81 S.Ct. 776], the United States Supreme Court ruled that a landlord does not retain the right to enter rented premises for the purpose of conducting a search during the term of the tenancy although the tenant may be temporarily absent, nor does the landlord have the authority to grant consent to the police to enter and to search.

In *Chapman* v. *United States, supra,* the landlord gave consent to the police to enter and search at a time when the tenant was in possession of the premises, although temporarily absent from the premises. The government attempted to justify the entry, search and seizure without a search warrant on the grounds that a landlord has the right to enter to view waste, therefore he can exercise this right through law enforcement officers to whom he delegated this authority. The Supreme Court rejected this argument in the following language: "There are several answers to this contention. First, here the landlord and the officers forced open a window to gain entry to the premises. Second, 'their purpose in entering was [not to view waste but] to search for distilling equipment . . . .' *Jones* v. *United States, supra* (357 US at 500). Third, to uphold such an entry, search and seizure 'without a warrant would reduce the [Fourth] Amendment to a nullity and leave [tenants'] homes secure only in the discretion of [landlords].' *Johnson* v. *United States, supra* (333 US at 14). Moreover, 'it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. . . . [W]e ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime.' *Jones* v. *United States*, 362 US 257, 266, 267, 4 L ed 2d 697, 80 S Ct 725, 78 ALR2d 233.

"After pointing to the fact that a Georgia statute (Title 58 Ga Code § 106) provides that the unlawful manufacture of distilled liquor on rented premises shall work a forfeiture of the rights of the tenant, at the option of the landlord, and that another (Title 58 Ga Code § 109) provides that use of a structure for that purpose constitutes a nuisance, the Government argues that, inasmuch as he used the demised premises for the illicit manufacture of distilled liquor, petitioner had forfeited all rights in the

premises, and the landlord thus acquired the right forcibly to enter to abate the nuisance, and that he could and did delegate that right to the officers. But it is clear that, before the officers made the forcible entry, the landlord did not know that the premises were being used for the manufacture of liquor, nor had he exercised his statutory option to forfeit the tenancy for such a cause. And the Supreme Court of Georgia has held that a proceeding to abate a nuisance under § 109 'must proceed for the public on information filed by the solicitor-general of the circuit.' *Kilgore* v. *Paschall*, 202 Ga 416, 417, 43 SE2d 520, 521." (*Chapman* v. *United States*, 365 U.S. 610, 616-617 [5 L.Ed.2d 828, 833-834, 81 S.Ct. 776].)

In *Chapman* the tenant was in possession at the time the landlord and the police forcibly entered the rented premises. The Supreme Court in the quoted language points out that no steps had been taken by the landlord to end the tenancy. In the case before us the landlord took aggressive steps to end the tenancy of the defendants by removing all the furniture from the furnished apartment except for a television set and an art object. From the record before us we do not know what legal action to terminate the tenancy was taken by the landlord since the defendants successfully foreclosed questioning concerning the procedural steps taken by the landlord to effect a lawful eviction for nonpayment of rent by convincing the magistrate that "All this information about notice to pay rent or quit is pretty immaterial." In analyzing the rule of the *Chapman* case the following facts should be noted: (1) the tenant was in undisputed possession of the premises at the time of the entry; (2) the police and the landlord *forcibly* entered the premises by breaking a window; (3) no evidence was offered that the landlord believed that he had exclusive joint control of the premises or that the police, under the circumstances, reasonably and in good faith, believed that the landlord had the authority to consent to the entry and search.

In *Stoner* v. *California*, 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889], the Supreme Court held that the *Chapman* rule applied to a purported consent to enter and search granted to the police by a hotel proprietor to a hotel guest temporarily absent from his room. The Supreme Court in *Stoner* also rejected the argument that the search was reasonable "because the police, relying upon the night clerk's expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search." (*Stoner* v. *California*, 376 U.S. 483, 488 [11 L.Ed.2d 856, 860, 84 S.Ct. 889].) From the evidence before it the Supreme Court concluded: "But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room.

"At least twice this Court has explicitly refused to permit an otherwise

unlawful police search of a hotel room to rest upon consent of the hotel proprietor. *Lustig* v. *United States,* 338 U.S. 74, 93 L. ed. 1819, 69 S.Ct. 1372; *United States* v. *Jeffers,* 342 U.S. 48, 96 L. ed. 59, 72 S.Ct. 93." (*Stoner* v. *California,* 376 U.S. 483, 489 [11 L.Ed.2d 856, 860, 84 S.Ct. 889].)

From the foregoing language, it would appear that the Supreme Court has found, as a matter of law, that in view of *Chapman, supra, Lustig, supra, Jeffers, supra,* and *Stoner, supra,* reliance on a landlord's consent to enter and search premises *known by the officer to be in the possession of the tenant* is not reasonable.

The instant case is clearly distinguishable from the facts which gave rise to the *Chapman* and *Stoner* decisions.

1. At the time consent to enter and search was granted to the police officer, the landlord had in fact evicted the defendants and thus had removed them from possession of the premises. The landlord had taken exclusive possession of the premises by the use of force, or self help.

2. The discovery of the marijuana occurred during the original entry by the landlord to remove the furniture. The police were not made aware of the existence of the marijuana in the apartment or that the physical eviction had occurred until the landlord had acted.

3. There is nothing in the record to indicate, nor is it contended by the People, that the police believed that the landlord was authorized by Mr. and Mrs. York to permit the police to enter the apartment. From the record before us, the landlord appeared to be in exclusive possession of the premises at the time the police arrived as the result of the eviction of the defendants. At the time consent was granted to the police officer to enter and look the only person who appeared to be capable of granting consent was the landlord, at least until the tenants were able to obtain a court order restoring them to possession, *if* the tenants elected to seek such relief.

It is our view that at least for purposes of the Fourth Amendment a landlord who has evicted his tenant for nonpayment of rent has the authority to consent to an entry by the police into the premises in order to seize contraband discovered by the landlord in the course of the eviction.

We believe this case also comes within the doctrine of *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469]. In *Gorg,* the California Supreme Court held that a search is not unreasonable if made with the consent of a third party whom the police reasonably and in good faith believe has authority to consent to their search. (See *People* v. *Smith,* 63 Cal.2d 779,

799 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Caritativo,* 46 Cal.2d 68, 72-73 [292 P.2d 513].) The rule of the *Gorg* case has been reaffirmed by the California Supreme Court since the decisions of the United States Supreme Court, in *Chapman, supra,* and *Stoner, supra.* (See *People* v. *Hill,* 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641], certiorari granted, 396 U.S. 818 [24 L.Ed.2d 68, 90 S.Ct. 112]; see also *People* v. *McGrew,* 1 Cal.3d 404, 412, 413 [82 Cal.Rptr. 473, 462 P.2d 1].) ▮▮▮ The uncontroverted evidence established that the officer had a reasonable and good faith belief that the landlord had the actual authority to consent to the entry of the apartment and to the seizure of the marijuana because of the eviction of Mr. and Mrs. York.

The real parties in interest contend that the police officer had a duty to ascertain the legality of the alleged eviction before acting on the consent of the landlord. We disagree. If the evidence showed that the officer had actual knowledge that the eviction of Mr. and Mrs. York was illegal under landlord and tenancy law it might be argued that he did not have an honest belief that the landlord had actual authority to grant consent to enter and search. However, there is no evidence in the record that the police officer knew the eviction was unlawful.

Although the record is not completely clear, the trial court apparently concluded that a police officer is presumed to know the law relative to the proper procedures to be followed in effecting a lawful eviction. Even if we assume that a police officer is presumed to know the law relative to the eviction of tenants for nonpayment of rent, there is no evidence in the record that the officer in this matter was aware that the landlord had failed to follow the law.

We have concluded that a landlord who physically evicts a tenant for nonpayment of rent by removing the furniture from a furnished apartment has taken actual possession of the premises to the extent that he can authorize the police to enter and seize contraband the existence of which has been exposed in removing the furniture.

It should be noted that the landlord did not purport to grant consent *to search* the personal property of Mr. and Mrs. York nor is there any evidence that any of the suppressed items were discovered as the result of a police search. The police were merely authorized to "enter to look" at what appeared to be the marijuana.

▮▮▮ Since we have concluded that the police officer was legally on the premises, he had the right to seize what he recognized as contraband since it was "in plain sight" whether or not he possessed a warrant. There was no search since the marijuana was in plain view. (See *Skelton* v. *Superior Court,* 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ In reaching our decision we are mindful of the rule applicable to unprecedented factual situations involving the reasonableness of police conduct as restricted by the Fourth Amendment. "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

The exclusionary rule was developed to deter lawless enforcement of the law and invasions of the privacy of individuals by the police without the obtaining of a search warrant from an impartial magistrate. (*Linkletter* v. *Walker,* 381 U.S. 618, 636-637 [14 L.Ed.2d 601, 612-613, 85 S.Ct. 1731]; *People* v. *Cahan,* 44 Cal.2d 434, 447-449 [282 P.2d 905, 50 A.L.R. 2d 513].)

In the instant matter the privacy of Mr. and Mrs. York was not forcefully invaded by the police but by an indignant landlord intent on ending their tenancy because of nonpayment of rent.

At the time the landlord removed the furniture and seized possession of the rental premises he did not act as an agent of the police. The police were not called until the marijuana was discovered. ■ The protection of the Fourth Amendment against unreasonable searches and seizures applies only to governmental action. It is not a restraint against unreasonable searches and seizures by private persons not acting under the direction and control of a law enforcement officer. (*Burdeau* v. *McDowell,* 256 U.S. 465, 475 [65 L.Ed. 1048, 1050, 41 S.Ct. 574, 13 A.L.R. 1159].) In *Burdeau* a private citizen seized the private office occupied by McDowell and took certain private papers after blowing open two safes. Certain of the private papers were turned over to the Department of Justice. The Supreme Court reversed an order of the trial judge requiring the government to return the private papers in the following language: "The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

"In the present case the record clearly shows that no official of the Federal Government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company. It is manifest that there was no invasion of

the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another. A portion of the property so taken and held was turned over to the prosecuting officers of the Federal Government. We assume that petitioner has an unquestionable right of redress against those who illegally and wrongfully took his private property under the circumstances herein disclosed, but with such remedies we are not now concerned." (*Burdeau* v. *McDowell*, 256 U.S. 465, 475 [65 L.Ed. 1048, 1050, 41 S.Ct. 574, 13 A.L.R. 1159].)

In the case before us the seizure of the rented premises for nonpayment was the independent act of the landlord. Accordingly, the police did not act unreasonably in availing themselves of the limited right granted to them by the landlord to enter and look. "The fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable." (*People* v. *Roberts,* 47 Cal.2d 374, 380 [303 P.2d 721].)

The trial court erred in granting the motion to suppress.

The petition for a peremptory writ of mandate is granted.

Roth, P. J., and Wright, J., concurred.

The petitions of the real parties in interest for a hearing by the Supreme Court were denied March 19, 1970.