[Sac. No. 7878. In Bank. Aug. 13, 1971.]

LANCE WELLINGTON KRAUSS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Robert N. Chargin, Public Defender, and Ann M. Chargin, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Eddie T. Keller, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**WRIGHT, C. J.**—Petitioner seeks a writ of mandate to compel the Superior Court of San Joaquin County to grant his motion pursuant to section 1538.5 of the Penal Code to suppress as evidence marijuana claimed to be the fruit of an illegal search. We conclude that although a law enforcement officer at the invitation of a motel manager made an illegal entry into a room occupied by petitioner prior to securing a search warrant, such action did not vitiate a search made pursuant to a valid warrant.

Petitioner was registered at a Tracy motel. While cleaning his room a maid, Mrs. Hernandez, saw what appeared to be an empty cigarette package on a nightstand. She opened it to see if it was in fact empty and should be discarded and discovered a plastic sandwich bag containing a green leafy substance. She had previously attended a drug demonstration class conducted by the police department at which she saw and smelled marijuana. On the basis of that experience she believed that she had discovered marijuana. She replaced the bag in the cigarette package, put the package back on the nightstand, and told the motel manager, Mrs. Jacobs, of her discovery. Mrs. Jacobs inspected the items and then telephoned the police.

Sergeant Guevara of the Tracy Police Department went to the motel in response to the call, and Mrs. Hernandez and Mrs. Jacobs told him that they believed there was marijuana in petitioner's room. With the manager's permission Officer Guevara entered the room with the two women. He inspected the cigarette package and the plastic bag and saw the substance, which was later identified as marijuana. He then put the cigarette package and its contents back on the nightstand as he had found them.

That afternoon Sergeant Guevara obtained a warrant to search peti-

tioner's room. In the affidavit in support of the warrant he recited in detail the facts told to him by Mrs. Hernandez, including the facts showing her familiarity with marijuana. He omitted any reference, however, to his own entry without a warrant. He also stated that he knew that petitioner was reputed to be "on the fringes of the drug traffic" in Tracy and that he had been told by other police officers that they had information that petitioner was involved in drug traffic. Sergeant Guevara returned to the motel that evening with the search warrant and properly served it upon petitioner, who was then in his room, and seized the marijuana and arrested petitioner.

Petitioner contends (1) that Sergeant Guevara's affidavit was insufficient to provide probable cause for the issuance of a search warrant; and (2) that the marijuana should be excluded from evidence as the product of an illegal search.

### Sufficiency of the Affidavit

■ The test for the constitutional sufficiency of an affidavit for a search warrant was set forth by the United States Supreme Court in *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509], as follows: "Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was . . . 'reliable.'"

■ Sergeant Guevara's affidavit satisfies both prongs of this test. Although his conclusionary statements as to petitioner's reputation in the drug traffic in Tracy as well as information allegedly received from other police officers do not constitute the detailed, factual statements required by the Fourth Amendment (*People* v. *Scoma* (1969) 71 Cal.2d 332, 337 [78 Cal.Rptr. 491, 455 P.2d 419]; *Spinelli* v. *United States* (1968) 393 U.S. 410, 416 [21 L.Ed.2d 637, 643-644, 89 S.Ct. 584]), the information supplied by Mrs. Hernandez was factual, not conclusionary, in nature, and showed that she spoke from personal knowledge. (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681].) This information alone was sufficient to support the magistrate's determination that probable cause existed for the issuance of the warrant. It established not only that Mrs. Hernandez spoke from personal knowledge but also that her information was reliable. As a citizen who observed the commission of a crime, she was more than a mere informer. "[T]ests of reliability that must be applied to experienced stool pigeons do not necessarily apply

to every private citizen who aids the police." (*People* v. *Guidry* (1968) 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794]; see also, *People* v. *Griffin* (1967) 250 Cal.App.2d 545, 551 [58 Cal.Rptr. 707]; *People* v. *Lewis* (1966) 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579].) Although her status as a citizen informer did not eliminate the necessity of establishing that her information was reliable, the circumstances of her discovery, the details of her information, and her prior experience in examining marijuana justified the magistrate in concluding that she was reliable.

### Fruit of the Illegal Search

Petitioner contends that Sergeant Guevara's initial search was conducted in violation of the Fourth Amendment and that the marijuana which was seized in the subsequent search of the motel room should have been excluded as fruit of the original illegality.

By registering as a guest petitioner impliedly consented to motel employees entering his room in the performance of their duties. (*United States* v. *Jeffers* (1951) 342 U.S. 48, 51 [96 L.Ed. 59, 64, 72 S.Ct. 93].) He did not consent, however, impliedly or otherwise to those employees allowing police officers to enter his room to search for contraband (*Stoner* v. *California* (1964) 376 U.S. 483, 488-489 [11 L.Ed.2d 856, 860-861, 84 S.Ct. 889]; *Chapman* v. *United States* (1960) 365 U.S. 610, 616-617 [5 L.Ed.2d 828, 833-834, 81 S.Ct. 776]; *Lustig* v. *United States* (1948) 338 U.S. 74, 76-77 [93 L.Ed. 1819, 1822-1823, 69 S.Ct. 1372]; *People* v. *Superior Court* (1970) 3 Cal.App.3d 648, 654 [83 Cal.Rptr. 732]), and Sergeant Guevara had no reason to believe otherwise (*Stoner* v. *California, supra,* at p. 488 [11 L.Ed.2d at p. 860]; cf. *People* v. *Gorg* (1955) 45 Cal. 2d 776, 783 [291 P.2d 469]). Since the prosecution also failed to show any other basis for a search of petitioner's room without a warrant the initial entry and search by Officer Guevara was illegal.

It does not follow, however, that the marijuana must be suppressed. Only that evidence which is the fruit of an illegal search must be excluded. The appropriate question to be answered is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], quoting Maguire, Evidence of Guilt (1959) p. 221.) We find no exploitation of the illegal entry in this case.

Before that entry Sergeant Guevara had lawfully acquired information from the motel employees that was sufficient to support the issuance of a search warrant. It was not unlawful for him to use that

information to obtain the warrant. The magistrate's independent decision to issue the warrant was in no way tainted by the officer's illegal personal observations, for the magistrate was wholly unaware of such observations. Although· those observations may have contributed to Officer Guevara's decision to secure the warrant, he did not thereby exploit them within the meaning of *Wong Sun*. Thus in *Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 7 [88 Cal.Rptr. 380,' 472 P.2d 468], we held that an occupant's subsequent consent to an entry motivated by an asserted prior illegal observation dispelled any taint flowing from that observation. Similarly the magistrate's independent evaluation of Officer Guevara's affidavit dispelled any taint flowing from his original entry. To hold otherwise would go beyond excluding evidence unlawfully obtained and in effect grant petitioner immunity from prosecution because of the officer's collateral wrong. (See *People* v. *Valenti* (1957) 49 Cal.2d 199, 203 [316 P.2d 633].)

*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1106 [80 Cal.Rptr. 633, 458 P.2d 713], is not to the contrary. In that case the officer's decision to make an arrest without a warrant was based on both legally and illegally obtained evidence, and we held that it could not be sustained in the absence of a showing that the officer could lawfully have made the arrest and would have done so on the basis of the legally obtained evidence alone. In the present case the magistrate issued the warrant solely on the basis of sufficient legally obtained evidence. The marijuana found in petitioner's room is thus the product of a search sanctioned by a warrant issued upon knowledge lawfully obtained by means distinguishable from the unlawful search and is not come at by exploitation of that illegality. (See *People* v. *Garay* (1967) 247 Cal.App.2d 833, 837-838 [56 Cal.Rptr. 55]; *Howell* v. *Cupp* (9th Cir. 1970) 427 F.2d 36, 38; *Wayne* v. *United States* (1963) 318 F.2d 205, 209 [115 App.D.C. 234]; *Rouda* v. *United States* (2d Cir. 1926) 10 F.2d 916.)

The petition for a peremptory writ of mandate is denied.

McComb, J., Mosk, J., and Burke, J., concurred.

**PETERS, J.**—I dissent.

The majority's ruling admitting evidence secured by the search-unlawfully-first-obtain-the-warrant-later procedure followed by the officer in this case totally undermines the reasons for adopting the rule excluding illegally obtained evidence and the purposes of requiring a search warrant. The majority concede as they must that the initial search by Sergeant Guevara was illegal in violation of the Fourth Amendment of the United States Constitution. The majority's approval of the search-unlawfully-first-obtain-

the-warrant-later procedure, in the light of practical considerations, can only have the effect of inviting and encouraging, if not directing, officers in the future to engage in similar unlawful searches in violation of the Constitution as a general practice.

This court in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], and the United States Supreme Court in *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], adopted the rule excluding evidence obtained in violation of the Fourth Amendment only after a lengthy experience with the results of the admission of such evidence. That experience taught that there was no effective sanction to prevent overzealous law enforcement officials from engaging in unlawful searches and seizures in violation of the constitutional guarantees and that to permit admission of the evidence furnished an incentive for officials to violate the constitutional guarantees of all citizens.

The rule excluding evidence obtained in violation of the constitutional guarantee was adopted in order to deter overzealous law enforcement officials from engaging in unlawful searches. It was adopted not to vindicate the constitutional rights of lawbreakers or to punish officers for unlawful searches already conducted, but to protect the constitutional rights of all citizens, especially the innocent, in the only way those rights could be effectively protected, by removing the incentive of officials to engage in unlawful searches and seizures. "By denying any profit from the unconstitutional methods of law enforcement, it is to be anticipated that law enforcement officials will have no incentive to engage in such methods." (*People* v. *Moore,* 69 Cal.2d 674, 682 [72 Cal.Rptr. 800, 446 P.2d 800].)

Our experience has taught that the converse is true. Where the courts furnish a benefit to law enforcement officials to engage in searches in violation of the guarantees of the Constitution, it is to be anticipated that many law enforcement officials will engage in such methods.

Today's decision by admitting evidence secured by the search-unlawfully-first-obtain-the-warrant-later procedure provides a substantial benefit for engaging in the unlawful search. Under the decision an officer may conduct the unlawful search for evidence, and if his information is correct and he finds the evidence, he will then seek a search warrant and the evidence seized pusuant to it will be admissible. Where the information constituting probable cause is incorrect and the unlawful search by the officer fails to turn up the evidence, he will be spared the substantial burden of seeking a warrant. The avoidance of this burden constitutes a substantial profit from the unlawful search.

It is important that we carefully categorize the profit given to law en-

forcement agencies by the majority opinion because when we do so it becomes apparent that the profit exists only where no contraband or incriminating evidence is found and that the incentive to search unlawfully is greatest in those cases where the search is based on hunch or unreliable information. In those cases where there is evidence furnishing probable cause for a search and the unlawful search turns up contraband or incriminating evidence, we may anticipate that the officer, in the light of today's majority opinion, will thereafter proceed to obtain a warrant. In short, he will not avoid the burden of seeking the warrant, and there is no substantial benefit in the unlawful search.

On the other hand, where the officer has a "hunch" or information which is unreliable and probably false, the incentive to search unlawfully is greatest. An officer, having grave doubts as to whether any contraband will be found, has a strong incentive to unlawfully search to make sure the contraband is present before he undertakes the substantial burden of preparing an affidavit and bothering a busy judge for a search warrant. It is precisely this type of unlawful search, the search based on "hunch" or unreliable information, which the Fourth Amendment is designed to prevent. It is here that the Fourth Amendment itself strikes the balance and requires that the individual's right to privacy must take precedence over society's interest in apprehending criminals. And it is in this class of searches where the benefit furnished by the position taken by the majority is the greatest. In searches based on "hunch" or unreliable information, the officer is least likely to find contraband or incriminating evidence, and, of course, if nothing is found, he will avoid the substantial burden of seeking a warrant.

The vice inherent in today's majority ruling is that it places the over-zealous police officer who breaks the law in at least a position equal to, and in some situations better than, the conscientious officer who believes it his duty to enforce the Constitution rather than break it. Where the officer has a mere "hunch" and does not have probable cause to search, it is to be anticipated that the law-abiding officer who will seek a warrant will be denied one and will not recover any contraband or incriminating evidence; although the officer who violates our constitutional guarantees will unlawfully search, any evidence he may recover would be excluded. In the absence of probable cause to search, the results will be substantially the same. Where the officer has probable cause to search, the evidence obtained by an unlawful search, under today's majority ruling, will be admissible which is the same result that would follow if the officer had observed our constitutional guarantees and secured a warrant before searching. Accordingly, where contraband or incriminating evidence is found, whether as the result of a search based on probable cause or of one without probable cause,

the result is the same, and under today's majority ruling there is no incentive to get a warrant. On the other hand, there is an incentive to search unlawfully when we look at the cases where no contraband or incriminating evidence is secured. In those cases, the law-abiding officer will seek a warrant before searching whether or not he has probable cause; whereas the overzealous officer will never have occasion to seek the warrant because having searched unlawfully without finding anything he is aware that it will be an idle act to seek the warrant. Thus the latter officer is spared the burden of seeking the warrant in all cases where no contraband or incriminating evidence is found, and in the future I would guess that there will be few officers who would not search unlawfully first and seek the warrant only if the search is successful.

Where there is overwhelming evidence of probable cause, the principle of deterrence upon which the exclusionary rule is founded points in the direction of the rejection of the evidence to take away the incentive to search unlawfully. Although in such cases the intrusion on privacy may seem minimal because the officer could obviously secure a warrant and invade the defendant's privacy, the conduct is unlawful and courts should not encourage it. In cases where the evidence assertedly providing probable cause is unreliable or questionable, the principle of deterrence not only points to but requires rejection of the evidence found in the unlawful search. Since any rule we adopt must either furnish or deny an incentive for unlawful searches in both the strong and the weak probable cause cases, we must eliminate the incentive in both cases; otherwise, we permit and in effect direct officers to unlawfully search in all cases as a general practice before securing a warrant.

To me the conclusion is inescapable that the search-unlawfully-first-obtain-the-warrant-later procedure would totally undermine the purposes of the exclusionary rule. By holding that a search warrant subsequently obtained on the basis of probable cause insulates the prior unlawful search, the majority provide profit for the unlawful search, thus violating the principle of deterrence on which the exclusionary rule is based, and we may expect that many officers will engage in unlawful searches in violation of the constitutional guarantees to determine whether their information is correct or not before seeking a warrant.

The procedure of the unlawful search followed by the warrant not only undermines the purpose of the exclusionary rule but also is in direct conflict with the purposes of the search warrant requirement. The basic rule is that absent a compelling emergency probable cause no matter how great does not justify search of a home without a warrant. The purpose of the warrant requirement has been stated in numerous cases: " 'The point of the

Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers.' " (E.g., *Chapman* v. *United States*, 365 U.S. 610, 614-615 [5 L.Ed.2d 828, 832, 81 S.Ct. 776], quoting from *Johnson* v. *United States*, 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367].)

Approval of any procedure for obtaining the warrant after search must of necessity fly in the face of the purpose of the warrant requirement. The requirement is designed to prevent searches without probable cause, but under the procedure followed here, the search is completed before there is a magistrate's determination as to whether or not there is probable cause.

Moreover, to conceal evidence bearing so directly on the issue of probable cause, as the officer did in the instant case, totally undermines the purpose of the warrant requirement. The magistrate must make his determination on the basis of the information known; to reward, as the majority do, the concealment of information known to the officer bearing so clearly and directly on the issue of probable cause can only invite officers in the future to refuse to disclose to the magistrate the most important evidence bearing on probable cause.

The majority seek to justify the admission of the evidence found by the unlawful search and seized pursuant to the warrant on the basis of an exception to the "fruit of the poisonous tree" doctrine. There are four answers to this argument. First, we are not concerned with the "fruit" of the unlawful activity. The evidence here is the "tree" itself; the evidence was first sought in and discovered by the unlawful search and thus should be suppressed. When we are confronted with evidence first obtained directly and immediately by unlawful activity, we are not concerned with the "fruit" doctrine.

Second, even if we were concerned with the "fruit" doctrine, it is obvious that the doctrine must be applied in accordance with the basic purpose of the exclusionary rule and the search warrant requirement. As we have seen, to admit the evidence in the instant case would furnish a powerful incentive to engage in unlawful searches as a general practice in violation of the purpose of the exclusionary rule and contrary to the purpose of the search

warrant requirement. This is not a case where there is any reason to believe that admission of the evidence will not encourage future unlawful searches.

Third, contrary to the majority, the only reasonable conclusion on the record before us is that the officer seized the evidence in exploitation of the illegality. The officer after obtaining the information from the women at the motel did not determine to seek a warrant but instead first sought to verify their information by his unlawful search. There is nothing in the record to indicate that he was satisfied with their information and would have sought the warrant if he had not first verified their information by the unlawful search. In these circumstances the only reasonable inference is that the search warrant was obtained by the officer because of the result of his unlawful search and that the subsequent seizure of the contraband was an exploitation of the unlawful activity.

Fourth, contrary to the majority, there is no basis to conclude that the officer came at the evidence by means distinguishable from the unlawful search. In the facts of this case, the only reasonable conclusion is that the officer sought the search warrant to "cure" the unlawful search. He did not apprise the magistrate that he had observed the contraband as he would have done if he were not trying to cure the unlawful search but seeking the search warrant for some other reason.

I should point out that the holding that the "taint" may be so cured has grave implications and would defeat many of the principles that have been developed in our case law. If the taint is purged by obtaining a warrant after the search, it would seem to follow that the officer who enters in violation of section 844 of the Penal Code and finds contraband can then leave for a moment and reenter in compliance with the section and seize the contraband; an officer having probable cause to arrest a suspect may forcibly enter his home, search and find contraband, await the return of the suspect, then arrest him, and seize the contraband incident to the arrest.[1]

---

[1]*People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], involved such a suspect, and the officers having probable cause to arrest went to the house when he was not there and searched a trash can finding contraband. This court held that the seizure was defective, although defendant was subsequently arrested and under the then applicable rules a search of the trash can as incident to the arrest would have been proper. The fact that the officers could have searched lawfully had they waited for defendant to come to the house was not held to purge the "taint." The "taint" likewise should not be purged where the officers go back the second time and do it lawfully.

After the officers arrested Edwards, they searched the house and found other contraband. This court, assuming that there was probable cause for the arrest apart from the contraband found in the trash can, held that the contraband found in the second search must be excluded on the record before it as "fruit of the poisonous tree" on the

Of course, once this court goes so far as to broadly uphold the admission of evidence first observed in the course of an unlawful search on the ground that the evidence was seized in a second lawful search, the requirement of the second search is wasteful and inefficient to both policemen and courts and does not protect the right of privacy guaranteed by the Fourth Amendment. It would seem to follow that there is no need to require the second search but merely a showing that the officer, although he acted unlawfully, could have proceeded in a lawful manner and still secured the evidence. In other words, since the "taint" could be cured, it should be deemed "cured." Such a rule is an invitation to unlawful searches.

The four cases relied upon by the majority as showing that the evidence was obtained by means distinguishable from the initial illegality furnish weak support. In *People* v. *Garay*, 247 Cal.App.2d 833, 837-838 [56 Cal.Rptr. 55], the second search was incident to an arrest, and the court, in upholding the admission of evidence secured by the second search, pointed out that the arrest was based on matters learned by the officers in a lawful investigation *subsequent* to the assertedly unlawful search. The second search was not based on information unlawfully confirmed by the first search but independent matters not available at the time of the unlawful search. In *Rouda* v. *United States*, 10 F.2d 916, the court expressly left open the question whether an initial unlawful entry would invalidate a later entry and search pursuant to a search warrant; the court held that the initial entry was lawful. In *Wayne* v. *United States*, 318 F.2d 205, 209, the court reasoned that the evidence as to cause of death embodied in the coroner's testimony was not the "fruit" of the unlawful search in which the body was found because "it was inevitable" that the coroner would have obtained the body and conducted the post mortem examination prescribed by law. In the instant case, it cannot be said that "it was inevitable" that the officer would have secured the contraband. *Howell* v. *Cupp*, 427 F.2d 36, 38, is a case like *Garay*, where information lawfully acquired *subsequent* to the unlawful search furnished the probable cause for the issuance of the search warrant.

I am not unaware that there are those who believe that the rule excluding unlawfully obtained evidence should be repudiated because it assertedly does not serve its purpose, the deterrence of unlawful searches by law en-

---

ground that the prosecution had not established that the officers would have arrested Edwards without the evidence discovered in the trash can. (71 Cal.2d at p. 1106.)

It seems to me that the part of *Edwards* dealing with the search of the trash can is controlling because the evidence sought to be suppressed in the instant case was that found as a result of the illegal search. But even assuming that the second part of the *Edwards* opinion is controlling, the prosecution has not met its burden of establishing that the officer in the instant case would have secured the warrant even if he had not engaged in an unlawful search.

forcement officials. However, we are committed to the exclusionary rule by *Cahan* and *Mapp,* and we should not try to sabotage it by furnishing incentives for illegal searches.

I am also aware that there are those who believe that the price exacted by the exclusionary rule, the release of some criminals, is too great a price to pay to secure compliance with the Fourth Amendment. However, this belief is rejected by the Fourth Amendment itself; inherent in the Fourth Amendment is the determination of our founding fathers that law enforcement officials shall not engage in unlawful searches, which includes the determination that evidence shall not be obtained illegally and that rejection of illegal searches will permit some criminals to escape.

Until the citizens of our country repeal the Fourth Amendment or the exclusionary rule is rejected, I believe it is my duty as a judge to uphold them and not to seek subterfuges which will undermine or sabotage the exclusionary rule or encourage violations of the Fourth Amendment.

I would issue a peremptory writ of mandate to order the suppression of the evidence resulting from the unlawful search.

Tobriner, J., and Sullivan, J., concurred.

Petitioner's application for a rehearing was denied October 21, 1971. Peters, J., Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.