[Civ. No. 1639. Fifth Dist., May 16, 1972.]

KENNETH CORNELIUS, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Goldberg & Fisher and David F. Goldberg for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Nelson P. Kempsky, Eddie T. Keller and Carol Hunter, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**STONE, P. J.**—We granted a hearing on this writ, not because we were troubled about the lower court's ruling on the merits, but for the reason the procedural problems presented appear to be res nova. Briefly, the facts are these: Petitioner was one of the proprietors of a used car sales lot in Bakersfield. Law officers in Kern County were told by a reliable informant that petitioner and several other men were engaged in dismantling, reassembling and selling campers and pickup trucks which had been stolen by a theft ring in Southern California. An extensive investigation corroborated that information.

The officers observed a camper on petitioner's used car lot which had been reported stolen from the owner, Mr. McLain. They arranged for him to come from his home in Glendale to Bakersfield where, on July 11, 1970, he accompanied Officer Hall to petitioner's lot. He identified the camper as his. Officer Hall kept the camper under surveillance and late in the afternoon of July 13 he observed it being placed on a Chevrolet pickup. About 6:30 p.m. the unit was driven away, and Officer Hall and Sergeant Bell of the Kern County sheriff's office followed and stopped it when out of sight of petitioner's lot. Earl Moore, the driver, told them he bought the camper from Ken-Lon Auto Brokers (petitioner's company) and paid for it with a cashier's check.

About 8 o'clock the next morning, July 14, Hall, Bell and two Glendale police officers went to the Ken-Lon office. The only persons present were the bookkeeper and a salesman. The officers talked with them and were told the Moores had paid for the camper by a cashier's check. Detective Bell asked to see the check and Sonny Oscars, the bookkeeper, handed it to him. After examining it, Bell took the check with him. Further discussion disclosed some records of the car lot were located at Sonny Oscars' home. The officers asked if they could see these records and Sonny said she would go get them. Accompanied by one of the Glendale officers, she went to her home. The officers who remained at the Ken-Lon office examined gasoline receipts, checks and ledgers. Sonny and the officer returned with two stock jackets containing information concerning two camper sales. The items taken by the police at this time were the two stock jackets and the cashier's check.

The Attorney General argues that the search was valid under the doctrine of "emergency search" because the cashier's check was negotiable and could be cashed as currency at any time; it was for Mr. Moore's protection that they obtained possession of it. The seizure of the two stock jackets is

justified under the consent theory, the Attorney General asserting that the bookkeeper who had custody voluntarily delivered possession of the stock jackets to the officers.

That evening, July 14, 1970, the officers obtained a search warrant and conducted a search about 7 o'clock. They seized an International forklift and a Shoreline camper, both in plain view on the sales lot which was open to the public. There was another search pursuant to a warrant issued July 31, 1970; the search was executed August 7, and the return was filed August 10, 1970. In this search certain check stubs and other records were obtained, which petitioner sought to have suppressed pursuant to motions made during trial.

Petitioner was acquitted on all but one count, possession of stolen property, to wit, the forklift seized pursuant to the writ on July 14. The jury could not agree as to this count, and a mistrial was declared. Apparently no motions under Penal Code section 1538.5 to suppress evidence were made prior to trial.

█ It is quite apparent that in drafting section 1538.5 the Legislature did not have in mind situations where a mistrial is ordered or a new trial is granted, and there is no appeal before the second trial is had. The question how a defendant can proceed to obtain a review of an order or a motion to suppress in petitioner's situation appears to be one of first impression. In the usual case where there has been a trial, if the defendant is acquitted that ends it, if he is found guilty he can obtain a review of an order relating to the suppression of evidence as part of his appeal, under subdivision (m). Here, petitioner was acquitted on all but one count and as to that count there was a mistrial, so there is no appeal pending. The logical answer to how he may obtain a review of an order made during trial would seem to be by filing a motion for a writ of review, analogous to the procedure outlined in subdivision (i). Of course subdivision (i) provides that a petition for a writ of review must be filed within 30 days after denial of motion to suppress. Following this analogy, a petition for writ of review must be filed within 30 days after the order declaring a mistrial is filed or, in the case of granting a new trial, within 30 days after the order granting a new trial becomes final.

Petitioner did not file a petition for writ of review within 30 days after entry of the order, and it would appear at first blush that he lost his right to review by a writ. However, he asserts that under section 1538.5, subdivision (i), he is entitled to one pretrial hearing on a motion to suppress, and that a motion made during trial of the case cannot be deemed such a pretral motion if a new trial is ordered.

■ Several cases, including *People* v. *O'Brien,* 71 Cal.2d 394 [78 Cal. Rptr. 202, 79 Cal.Rptr. 313, 455 P.2d 138, 456 P.2d 969], and *People* v. *Superior Court,* 4 Cal.3d 605 [94 Cal.Rptr. 250, 483 P.2d 1202], as well as the legislative history of section 1538.5, convey the idea that the purpose of the statute is to achieve an expeditious disposition of questions of suppression of evidence before trial with only one appellate review. This philosophy militates against repetitious hearings and reviews of the same matters, which is in accord with the Attorney General's theory that petitioner is out of court for failing to seek review within the 30 days after filing the mistrial order. (Subd. (i).)

Penal Code section 1538.5 was enacted largely for the purpose of settling troublesome questions of the admissibility of evidence before trial. Therefore, if during the first trial new grounds for moving for the suppression of evidence develop it is reasonable, and in keeping with the purposes of section 1538.5, that a defendant should move for the suppression of evidence before the retrial commences. The grounds which justify such a rehearing are spelled out in subdivision (h) (*People* v. *Superior Court,* 4 Cal.3d 605, 611 [94 Cal.Rptr. 250, 483 P.2d 1202]), which provides "If . . . opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court." Petitioner tells us that the case at bench is within the ambit of subdivision (h), but we do not find a sufficient showing of changed circumstances or developments that would warrant a new hearing. The motion before us, made after trial, rests largely upon the record of the first trial. The second superior court judge was actually passing upon a matter already passed upon by another judge of the same court. Petitioner asserts that a development in the law provided the basis for his renewed motion to suppress; he cites the decision in *Krauss* v. *Superior Court,* 5 Cal.3d 418 [96 Cal.Rptr. 455, 487 P.2d 1023], as the unforeseeable development occurring after trial that justified a review of the record in a different light. But insofar as this case is concerned, *Krauss* did not enlarge the scope of section 1538.5; it simply discusses a particular factual situation based on the "poisonous fruit" doctrine in relation to a motion to suppress. This doctrine was explicated long ago in *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921], and their progeny. Thus what petitioner refers to as "new grounds" were, in fact, settled law all along, and he has failed to point out facts that justified a renewed hearing under subdivision (h).

■■ Granting there were changed circumstances, we conclude that petitioner's motion to suppress was properly denied.

Petitioner was acquitted of all charges except the fifth count, possession of the stolen forklift. With that fact in mind, we consider the merits of his motion to suppress. The matrix of his argument is that the officers acted illegally in obtaining the cashier's check and the stock jackets from his bookkeeper, and thus the subsequent searches pursuant to warrants are necessarily tainted by that first warrantless search. But the mere fact of an unauthorized or illegal search does not, ipso facto, make evidence obtained in a subsequent search of the same premises pursuant to a warrant, the fruit of the prior illegal search. (*Krauss* v. *Superior Court, supra,* 5 Cal.3d 418.) There must be a nexus, clearly perceivable, between the first search and evidence seized in the second search. Here, none is shown. Petitioner dwells at some length upon the officer's "high-handed" conduct in taking the cashier's check without a warrant. He brands it an illegal search and seizure, while the Attorney General asserts that an emergency existed and, additionally, that the bookkeeper gave consent to the taking. We do not reach the question of "emergency" or of "consent" because petitioner does not point to a specific connection between that search and the evidence obtained in the subsequent search. It appears that the first search simply confirmed knowledge derived from the previous investigation before a search of any kind was made. The officers were well aware of the stolen camper and pickup truck operation from their investigation which had been in progress for a long time before the stolen camper was driven from the Ken-Lon lot during surveillance. It is important that the officers, by their prior extensive investigation, were well aware of the activities of the ring, and the so-called "emergency" seizure of the check and stock jackets did not alert them to anything that was not already known. In short, the product of the challenged search was not the source of the information embodied in the affidavits which provided the basis for the issuance of search warrants. In this respect *Krauss* actually supports the legality of the subsequent searches pursuant to warrants, rather than casting the pall of illegality over them as petitioner suggests. In *Krauss* the illegal search was not based upon information obtained by officers as the result of their own prior investigation, as here, but, rather, upon contraband shown to them by an informer. Yet the court held that a subsequent search under a warrant, which resulted in the seizure of the very contraband revealed to them, was valid.

As we have noted, petitioner now stands charged with the fifth count alone, receiving the stolen forklift. This narrows the scope of the evidence admissible in the second trial and points up the fact that petitioner's attack based upon all of the proceedings and motions to suppress in the first trial is too broad; much of such evidence appears to be irrelevant to the single remaining issue. The important fact remains that peti-

tioner has not directed our attention to any particular evidence pertaining to the remaining count, that emanated from the warrantless search.

Finally, it is particularly persuasive that an officer who executed the affidavits to obtain the two warrants for the second and third searches testified that in preparing his affidavits he did not rely upon evidence seized in the first warrantless search. He said he relied upon information from a confidential reliable informant, observations of investigation officers, and Department of Motor Vehicle reports, not upon anything he saw or that was seized during the warrantless search. Petitioner argues that this simply is not true; but both judges who heard arguments on the point resolved this factual determination against petitioner. As a reviewing court we must accept the trial court's resolution of contested factual matters in a section 1538.5 proceeding. (*People* v. *West*, 3 Cal.3d 595, 602 [91 Cal. Rptr. 385, 477 P.2d 409].)

The petition for peremptory writ of mandate is denied.

Gargano, J., concurred.

Brown (G. A.), J., deeming himself disqualified, did not participate.