[No. 3158–6–III.  Division Three.  June 24, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR L. CHRISTIAN, JR., *Appellant.*

*Gary C. Hugill,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Laurence S. Moore, Deputy,* for respondent.

GREEN, C.J.—Arthur L. Christian, Jr., appeals a conviction of unlawful possession of a controlled substance (phencyclidine and methamphetamine). We affirm.

The principal issue is whether the court erred in denying Mr. Christian's motion to suppress evidence seized from his apartment during a warrantless search based upon the consent of his landlord approximately 12 hours after his tenancy had terminated.

The findings of fact entered by the trial court following the suppression hearing are not challenged. These findings establish that shortly after noon on June 1, 1978, Lt. Butner of the Pasco Police Department was contacted by Mr. Lloyd, who identified himself as the manager of certain apartments in Pasco. He reported that Mr. Christian, a tenant in one of the apartments, had notified him that he was not going to continue his tenancy. The rent had been paid to midnight, May 31. Mr. Lloyd advised Lt. Butner that he had instructed Mr. Christian to be out of the apartment by noon on June 1. About that time he entered the apartment, found a set of scales on the kitchen table, white powder in plastic bags and two hypodermic needles in the refrigerator. He did not observe any personal clothing. Interrogation of Mr. Lloyd by Lt. Butner revealed that a pickup backed up to the door of the apartment on the night of May 31 and Mr. Christian and his brother had been seen moving items out of the apartment. Mr. Lloyd concluded that Mr. Christian had vacated the apartment. The description of the scales and the powder in plastic bags was consistent with the suspected presence of narcotics.

The court further found that on the evening of May 31, Mr. Lloyd and Mr. Christian discussed the expiration of the tenancy that would be effective at midnight. Although Mr. Christian informed Mr. Lloyd that he doubted he could be out by noon on June 1, Mr. Lloyd replied that he was coming in to clean the apartment by that time. As a result, the court found that Mr. Christian should have expected that Mr. Lloyd would enter the apartment by noon that day.

Further, the court found that, based on the information Mr. Lloyd gave them, Lt. Butner and Detective Pittman accompanied him to the apartment. The door was locked. Mr. Lloyd knocked on the door and when no one answered he used his key to open the door. The court found the officers did not observe any furniture which appeared to belong to other than the apartment owners. They did see a pair of dirty coveralls lying across the sofa. Lt. Butner went

directly to the kitchen area, opened the refrigerator and removed 13 cellophane bags containing a white powder. A field test indicated that the powder appeared to be cocaine. The court further found that, unknown to Mr. Lloyd or Lt. Butner, after the personal items had been removed on the night of May 31, Mr. Christian and his brother returned and spent the night in the apartment. They intended to remove the few remaining items at a later time. Although not in the findings, the record shows that the two brothers returned while Mr. Lloyd and the officers were in the apartment. Further, after the refrigerator had been entered, the officers found a few other personal items in the apartment.

Finally, the court found Lt. Butner acted reasonably and in good faith in relying upon the information supplied him by Mr. Lloyd. It also found Mr. Lloyd acted reasonably in the good faith belief that Mr. Christian and his brother had vacated the apartment at the time he requested the officers to enter the apartment to remove the suspected narcotics. The court concluded the entry of Lt. Butner and his fellow officer and the seizure of the controlled substance was not unreasonable or in violation of the fourth amendment to the United States Constitution, or the constitution of this state. The motion to suppress was, therefore, denied.

First, Mr. Christian contends the evidence should be suppressed because the warrantless search violated his Fourth Amendment rights. He argues that, since he had not completely moved out of the apartment, he retained a possessory interest and Mr. Lloyd could not consent to the search. On the other hand, the State contends the search was reasonable because Mr. Christian did not retain a privacy expectation in the apartment. As a result, Lt. Butner and his fellow officer were entitled to rely on Mr. Lloyd's consent to search the apartment. We agree with the State's position.

■■ The test for determining whether Fourth Amendment rights have been violated is first whether "a person [has] exhibited an actual (subjective) expectation of privacy

and, second, [whether] that . . . expectation [is] one that society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring). Mr. Christian argues that the presence of his personal property, including the drugs in the refrigerator, evidenced his expectation of privacy. Although the items found by the officers may show that he had a subjective expectation of privacy in the apartment, we do not find that expectation reasonable. It is clear that Mr. Christian must show more than the privacy expectation that flows from his leaving drugs in the refrigerator. In *Rakas v. Illinois,* 439 U.S. 128, 143 n.12, 58 L. Ed. 2d 387, 99 S. Ct. 421, 430 (1978), the court held that standing to assert a Fourth Amendment violation depends upon whether one has a "legitimate" expectation of privacy in the area or thing to be searched. In discussing the meaning of a "legitimate" expectation of privacy, the court noted that while a defendant may have a subjective expectation of privacy in illegally obtained items or incriminating evidence, that expectation is not one society is prepared to recognize as reasonable.

■ The other items found by both Mr. Lloyd and the officers could reasonably have been interpreted to have been abandoned. Mr. Christian told Mr. Lloyd he did not intend to continue his tenancy and that same evening he drove a pickup truck to the apartment, loaded his belongings on it, and departed. In *United States v. Wilson,* 472 F.2d 901 (9th Cir. 1972), it was held that a tenant did not retain a reasonable expectation of privacy where there was evidence that he abandoned an apartment. *See also Abel v. United States,* 362 U.S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960) (motel room). Here, the court found Mr. Christian knew Mr. Lloyd was going to enter the apartment about noon on June 1 to clean it. Although Mr. Christian may have retained a right to remove his personal articles from the apartment, he *could not reasonably expect to retain* exclusive control under the circumstances presented.

Mr. Christian contends his privacy expectation was reasonable because his possession of the apartment was not formally terminated by the procedures outlined in our landlord–tenant statute. Further, he argues that while his failure to pay the rent when due June 1 may have technically terminated the tenancy, it did not eliminate his expectation of privacy. *See State v. Taggart,* 7 Ore. App. 479, 491 P.2d 1187 (1971); *United States v. Botelho,* 360 F. Supp. 620 (D. Haw. 1973); *People v. Stadtmore,* 382 N.Y.S.2d 807, 52 App. Div. 2d 853 (1976). In the circumstances presented here, we disagree.

Here, the evidence showed that Mr. Christian informed Mr. Lloyd he was not going to remain in the apartment the next month. While Mr. Christian told Mr. Lloyd he doubted he could be completely moved out of the apartment by noon the following day, he knew and did not object to Mr. Lloyd's intention to enter the apartment to clean it. Since Mr. Christian was vacating the apartment voluntarily, it did not appear Mr. Lloyd would be required to take any steps to evict him. Consequently, it should have been no surprise to Mr. Christian when Mr. Lloyd entered the apartment the following day.[1] To the contrary, he must have expected the entry.

██ Moreover, Mr. Christian's privacy expectation is not made reasonable merely because his tenancy was not terminated by the procedures outlined in our landlord–tenant statute. In *Jones v. United States,* 362 U.S. 257, 266, 4 L. Ed. 2d 697, 80 S. Ct. 725, 733 (1960), the court established that a state's property law cannot be the foundation upon which the Fourth Amendment rests:

---

[1]The cases relied upon by the defendant are distinguishable. In those cases, the defendant did not know either that the tenancy was terminated or that the landlord was going to enter the premises. *See State v. Taggart, supra* (the landlord acquiesced in a late payment of rent then due and later decided to evict the tenant); *United States v. Botelho, supra* (the tenants had not indicated that they would be leaving the apartment); *People v. Stadtmore, supra* (while the tenant was present in apartment and in process of moving out, a marshal arriving to evict tenant could not search based on landlord's consent).

[I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical.

■ Second, Mr. Christian argues that because he remained in possession of the premises Mr. Lloyd had no authority to consent to the search. Although a landlord may not consent to a search on behalf of a tenant where the tenant is in undisputed possession of the property, *Stoner v. California,* 376 U.S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889 (1964); *Chapman v. United States,* 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776 (1960); *see also State v. Talley,* 14 Wn. App. 484, 543 P.2d 348 (1975), in some circumstances he may consent to a search in his own right. In *United States v. Matlock,* 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), the court established at page 171:

[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

The court explained "common authority":

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

(Citations omitted.) *United States v. Matlock,* 415 U.S. at 171 n.7, 94 S. Ct. at 993. Although Mr. Christian knew Mr. Lloyd planned to enter the apartment, he did not return to the apartment until *after* noon. Thus, he assumed the risk that Mr. Lloyd would enter the apartment, as he told him he would do, would find the illegal drugs and report their existence to the police. Based upon the information Mr. Lloyd gave Lt. Butner, and the apartment's condition when they entered, it was reasonable for the officer to believe the landlord had total authority to consent to the search.[2]

We believe a functional approach must be taken to Fourth Amendment issues. Only unreasonable searches are precluded by the Fourth Amendment. Reasonableness is determined by looking to the facts and circumstances confronting the officers at the time of the search.[3] The consent exception reflects a fair accommodation between constitutional requirements and the encouragement of effective law enforcement. Each case must be considered in light of its own circumstances. We should not require an officer to engage in making subtle distinctions that can so easily be made after the fact.

> "Reason and common sense would indicate that if citizens are going to rely on police officers to protect their property, it is not necessary for the police to file a quiet title suit to ascertain ownership whenever a property owner calls police by telephone to check on his property.

---

[2]To exclude the evidence in these circumstances would not promote the rationale underlying the exclusionary rule. Its application is designed "to deter future unlawful police conduct," not to repair the "personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 38 L. Ed. 2d 561, 94 S. Ct. 613, 620 (1974). *See also United States v. Peterson,* 524 F.2d 167, 180 n.20 (4th Cir. 1974). The rule is based upon the assumption that police action is willful or at least reckless. The officers in this case acted in good faith. There was no police misconduct.

[3]While no finding was made, the evidence indicates that Mr. Lloyd entered the apartment prior to noon on June 1. This is not determinative of whether the search was valid. The Fourth Amendment excludes evidence obtained by misbehavior of officers, not private individuals. *Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 (1921); *State v. York,* 11 Wn. App. 137, 139, 521 P.2d 950 (1974).

All that is required is a reasonable good faith belief that the caller had the authority to consent to enter.

*People v. Superior Court,* 3 Cal. App. 3d 648, 653, 83 Cal. Rptr. 732, 735 (1970).

Where, as here, searching officers rely in good faith on the authority of the person consenting to the search and all the circumstances indicate that that person does in fact have control, evidence obtained by the search is admissible. *See People v. Gorg,* 45 Cal. 2d 776, 291 P.2d 469 (1955); *People v. Hill,* 69 Cal. 2d 550, 446 P.2d 521, 72 Cal. Rptr. 641 (1968); *People v. Superior Court, supra; see also United States v. Peterson,* 524 F.2d 167 (4th Cir. 1974); *United States v. Sells,* 496 F.2d 912 (7th Cir. 1974); *see also* 2 W. LaFave, *Search and Seizure* § 8.3(g) (1978). Therefore, the motion to suppress was properly denied.

Finally, Mr. Christian contends the trial court erred in admitting Lt. Butner's testimony of the street value of the drugs found in Mr. Christian's refrigerator. It is argued that, because he was charged with possession of a controlled substance and not possession with intent to sell, the testimony was irrelevant and prejudicial. The State contends the evidence was offered to disprove Mr. Christian's defense that his apartment was accessible to many people who could have left the drugs in his refrigerator. It argues the evidence tends to disprove that defense. We find no error.

Evidence is relevant if it logically tends to prove a material fact in issue. *State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976). The extent to which evidence is prejudicial is within the sound discretion of the trial court. *State v. Schrager,* 74 Wn.2d 75, 442 P.2d 1004 (1968). Lt. Butner's testimony cast doubt on the possibility that a third party stored the drugs in the defendant's apartment without his knowledge. Drugs of that value (and inferentially, quantity) would not likely be overlooked. The testimony tended to disprove a fact put in issue by the defendant.

Affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied July 29, 1980.

Review granted by Supreme Court October 24, 1980.