**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36473**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2011 Opinion No. 43** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: July 21, 2011** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ELOY NARANJO, JR.,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. R. Barry Wood, District Judge.

Judgment of conviction for trafficking in methamphetamine and failure to obtain a tax stamp, vacated and remanded.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Eloy Naranjo, Jr. appeals his judgment of conviction for trafficking in methamphetamine of twenty-eight (28) grams or more, but less than two hundred (200) grams, Idaho Code § 37-2732B(a)(4),[1] and failure to obtain a tax stamp, I.C. § 63-4205. We vacate the conviction and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officer Martinez with the Jerome County Sheriff's Office was contacted by an individual who volunteered to act as a confidential informant (the CI) in return for accommodations from

---

[1]    The State acknowledges that the Information cited the incorrect, nonexistent code section, I.C. § 37-2732B(a)(3)(a). Idaho Code § 37-2732B(a)(4) is the statute that criminalizes delivering twenty-eight grams or more of methamphetamine. Naranjo bases his argument on this statute and does not argue any error for the incorrect citation in the Information.

1

the sheriff's office regarding his sister (the CI's sister) arrest for possession of methamphetamine. The CI notified the sheriff's office that he believed he could purchase methamphetamine from Naranjo because he had purchased from Naranjo in the past. The sheriff's office agreed to set up a controlled buy from Naranjo using the CI to make the purchase. Naranjo agreed to meet the CI in a grocery store parking lot to sell him and his supposed friend (an undercover Drug Enforcement Administration officer) four ounces of methamphetamine. The officer searched the CI before the controlled buy to ensure he did not have any drugs, weapons, or a significant amount of money. After the CI and the undercover officer arrived at the parking lot as agreed, Naranjo called the CI and told him to meet at Naranjo's house. At that time, the CI was aware that his sister was at Naranjo's house.

The undercover officer parked his vehicle in Naranjo's driveway and the CI entered the house to conduct the purchase. For safety concerns, the undercover officer was unwilling to enter the house, and he was unwilling to send the CI in with the money until he saw the methamphetamine. The CI's sister exited the house to show the officer approximately one gram of methamphetamine. The officer remained in his vehicle, but gave the CI the money to make the purchase. The CI returned to the house and negotiated a sale in which Naranjo allegedly gave the CI a baggie containing one ounce (28.35 grams) of methamphetamine, and the CI gave Naranjo the $900 he received from the officer. After the transaction, Naranjo stood in front of his house and the officer was able to visually identify him.

At trial, the State's witnesses included: the CI, the undercover officer, Officer Martinez, and Scott Hoopes, a forensic chemist. Agent Lenhoff, to whom the substance was given for processing and testing, did not testify and Naranjo did not call any witnesses or testify. Naranjo argued that the CI and his sister set him up by fabricating the sale at his house and that the State could not tie him to the methamphetamine because it did not test the baggie for his fingerprints. The jury convicted Naranjo of failing to obtain a tax stamp and trafficking in methamphetamine of at least twenty-eight grams. Naranjo was sentenced to a unified term of ten years with five years determinate for trafficking in methamphetamine, to run concurrent with a unified term of three years with one year determinate for failing to obtain a tax stamp. Naranjo filed a motion for a new trial arguing he had newly-discovered evidence, which was denied. Naranjo appeals.

## II.

## DISCUSSION

Naranjo claims that: (1) the district court erroneously admitted prior bad act evidence, the CI's statement that he had previously purchased methamphetamine from Naranjo; (2) there was insufficient evidence to prove that the substance Naranjo sold was methamphetamine because Agent Lehnhoff did not testify; (3) the jury was improperly instructed on the elements of the offense; and (4) if these three errors were harmless standing alone, together they constituted cumulative error.

## A.     Sufficiency of the Evidence

Naranjo claims that insufficient evidence exists to support his conviction because "there was no evidence that established that the substance that tested positive for being methamphetamine was the same substance that Mr. Naranjo was alleged to have delivered to [the CI] . . . ." The sole basis for this contention is that Agent Lehnhoff, the DEA agent to whom the undercover officer delivered the substance, did not testify regarding his handling and transfer of the substance for testing.[2]

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The CI testified that Naranjo weighed out an ounce of a crystal substance, placed it in a clear baggie and sold it to the CI. He further testified that he gave the baggie to the undercover officer. The undercover officer explained that he obtained the baggie from the CI and delivered

---

[2]     Naranjo does not assert that any evidence was improperly admitted due to chain of custody concerns. *See State v. Gilpin*, 132 Idaho 643, 977 P.2d 905 (Ct. App. 1999).

it to Special Agent Lehnhoff, who did not testify because he was in Afghanistan. The undercover officer testified at length regarding the procedures used to handle and transport substances. These procedures included placing the substance in a heat-sealed envelope, identifying the envelope by case number, date, when and where the substance was obtained, and other identifying information. Compliance with the procedures is evidenced by the handling officer's signature and a witness signature. Procedures for shipping the substance to the DEA laboratory in San Diego for testing were also explained. The undercover officer examined the heat-sealed envelope placed into evidence and testified that the markings on it demonstrated that all of the procedures had been followed. He testified that he recognized Special Agent Lehnhoff's handwriting and his signature, together with the witnessing officer's signature. He further testified that the envelope contained all of the information required by the standard procedures. Finally, the undercover officer testified that the envelope contained the information to be included by the testing laboratory and that it appeared that the DEA's process was also followed.

Scott Hoopes, the forensic chemist with the DEA, testified that he performed the chemical analysis on the package received from Special Agent Lehnhoff using the proper procedures. He testified that the substance offered at trial was the same substance he had received, which was evidenced by the seal and his initials on the package. He further testified that the substance tested positive for methamphetamine.

We have reviewed the trial evidence and conclude that there is substantial evidence upon which a reasonable trier of fact, considering the evidence and reasonable inferences, could have found that the prosecution sustained its burden of proving beyond a reasonable doubt that the substance offered into evidence at trial, which tested positive for methamphetamine, was the same substance obtained by the CI from Naranjo.

**B.     Prior Bad Acts Evidence**

Naranjo claims that the district court erred when it allowed the CI to testify that he had previously purchased methamphetamine from Naranjo because the testimony was inadmissible prior bad act evidence and the State's Idaho Rule of Evidence 404(b) notice was untimely. Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010); *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). However, such evidence

may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In determining the admissibility of evidence of prior bad acts, the Idaho Supreme Court has utilized a two-tiered analysis. The first tier involves a two-part inquiry: (1) whether there is sufficient evidence to establish the prior bad acts as fact; and (2) whether the prior bad acts are relevant to a material disputed issue concerning the crime charged, other than propensity. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). Such evidence is relevant only if the jury can reasonably conclude the act occurred and the defendant was the actor. *Id*. We will treat the trial court's factual determination that a prior bad act has been established by sufficient evidence as we do all factual findings by a trial court. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We defer to a trial court's factual findings if supported by substantial and competent evidence in the record. *Id*. Whether evidence is relevant is an issue of law. *Johnson*, 148 Idaho at 667, 227 P.3d at 921; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Therefore, when considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When reviewing this tier we use an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Idaho Rule of Evidence 404(b) requires prosecutors to file and serve notice of the general nature of any evidence of prior crimes, wrongs, or acts that they intend to introduce at trial. The notice is required to be provided "reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown." I.R.E. 404(b). Naranjo contends that the State's notice of intent to use Rule 404(b) evidence was untimely. The State counters that Naranjo failed to object on timeliness grounds and, therefore, the issue is not preserved for appeal. Contrary to the State's assertion, Naranjo argued and preserved the timeliness issue.

5

The State provided notice to Naranjo's counsel that it was seeking to admit evidence under I.R.E. 404(b) by facsimile transmission at 4:58 p.m. the day before trial was scheduled to begin. The district court conducted a hearing on the issue the next morning just prior to trial. Defense counsel referenced the fact that he had received the notice at 4:58 p.m. the previous day and then recited the rule, noting that "the prosecution in a criminal case shall file notice reasonably in advance of trial, and then it allows during the trial that the court excuses a pretrial notice on good cause shown." Counsel argued that he could not defend against the evidence and that the witness had been available to the State for some time. Counsel stated:

> And so I submit that especially with this late notice -- the confidential informant's apparently been available since these charges were filed late last fall, I believe, of '07 and that informant's been available all this time and yet we just find out about it yesterday afternoon.

Finally, counsel concluded by stating: "And I think it's highly prejudicial and in violation of both the rule and the cases interpreting the rule to allow either of these alleged 404(b) evidence into this court *at this time*." (Emphasis added.) Clearly, counsel was arguing that, because the State had been aware of the information for some time, the notice was not provided "reasonably in advance of trial," and, therefore, in violation of the procedure required by the rule, preserving the issue for appeal.

The district court, in fact, determined that the notice was untimely. The court summarized Naranjo's argument as "you're saying there's no way to defend against it, aside from *the fact* that it's late." The State sought to admit two pieces of evidence. As the parties referred to them, "part one" was testimony from the undercover officer that after the charged conduct, the officer had negotiated with Naranjo over the phone to buy methamphetamine, but the sale never occurred. The evidence at issue on appeal, "part two," was testimony from the CI that he had purchased methamphetamine from Naranjo in the past before the charged conduct. Naranjo acknowledged that he had previously been made aware of "part one" from the undercover officer's police report, but maintained that he was unaware of the "part two" evidence even though the State was aware of the information for some time. The district court ruled:

> You can maybe use the one in part one. *Part two is undisclosed, it's late.* I can't say that it's more or less reliable or it shows identity or knowledge or a preparation plan, motive, opportunity or those other things. I can't say that it shows it any better than the evidence in part one; but part one is at least disclosed

and known by the defense.  And either of those -- if I had to choose the State to use either of those, it would be part one.

> *So I'm going to disallow the offer, I'm going to deny the motion to use the 404(b) evidence under part two.*  I'll reserve ruling on the offer under part one, and that is the November 3rd offer to purchase -- the cell phone conversations.  That may or may not be relevant to prove identity, motive, opportunity, any of those other things.

(Emphasis added.)

In *State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008), the Court addressed the consequences of a prosecutor's failure to properly provide I.R.E. 404(b) notice.  Sheldon was charged with trafficking in methamphetamine and concealing a dangerous weapon.  The prosecution failed to serve any I.R.E. 404(b) notice or request the district court to excuse notice during trial.  At trial, an officer testified that during interrogation "Mr. Sheldon told me that he was involved in dealing methamphetamine in the past and told me that he dealt smaller quantities than what was found in his vehicle."  *Id*. at 229, 178 P.3d at 32.  The Court held "that compliance with I.R.E. 404(b) is mandatory and a condition precedent to admission of other acts evidence."  *Id*. at 230, 178 P.3d at 33.  The Court held that because the State had failed to comply with the notice provision in the rule, the statements were inadmissible.  *Id*.  The *Sheldon* court then turned to the question of harmless error and held that the focus was not on prejudice from the lack of notice, but rather from the content of the inadmissible evidence.  *Id*.  In *Baldwin v. State*, 145 Idaho 148, 157, 177 P.3d 362, 371 (2008), the Court stated that "to hold an error harmless, this Court must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction."

At trial, when the State was questioning the CI on direct examination, the following exchange took place:

| Q: | Do you recall what information you may have given Officer Martinez regarding Eloy Naranjo? |
|---|---|
| A: | Yes.  I told him that I bought from Mr. Naranjo a few times and I was pretty sure I'd be able to get some more in larger amounts so that I could help my sister, you know, with the felony that she had. |
| [Defense Counsel]: | I'll object to that and ask it be stricken, you know, for the reasons that we discussed on the motion. |
| Court: | I'm going to overrule that objection and I'll clarify that when the jury's not present when we recess this afternoon. |

Once the jury was excused, the trial court explained his reasoning and, in part, stated:

7

> In my view that establishes -- to me it's part of the overall charge here. It is not necessarily a quote, unquote, prior bad act, showing a propensity to commit a crime on a prior occasion. To me it's part of what I would call almost a *res gestae* in this case. It shows why the confidential informant was able to meet with Mr. Naranjo, it shows how he knew him, it establishes why he was used. It establishes really how the investigation got focused onto Mr. Naranjo because he said, "This was my idea, I proposed this, I went to the police in an effort to help my sister and they asked me who I thought I could direct this investigation to and I'm the one that came up with this name because I had done this in the past." It explains how he got to where he got. How he got in the position.
>
> Without that evidence the jury is left to guess how he would even know Mr. Naranjo or why he would be trusted. . . .

The district court failed to return to, or expressly reverse, its prior ruling on the timeliness of notice issue. To the extent applicable, the State never argued good cause regarding the timeliness of the notice and the court did not make any findings or ruling on the establishment of good cause. Naranjo argues that the State could not have established good cause because the record reflects that the CI told the officer, prior to the controlled buy, that he thought he could buy from Naranjo because he had done so in the past, and, thus, the State was aware of the alleged prior purchases before the occurrence of the crime charged in this case, let alone the trial.

Naranjo asserts the statement from the CI was substantively inadmissible under I.R.E. 404(b) as propensity evidence, was highly prejudicial and of low probative value and, coupled with the notice being untimely, should have been excluded consistent with *Sheldon*. The State asserts the evidence was admissible to communicate to the jury why the CI contacted Naranjo to buy methamphetamine. The State asserts the CI's testimony was an integral and natural part of the witness's account and it was necessary to provide a coherent and comprehensible story for the jury.

Evidence is admissible under I.R.E. 404(b) when a complete account of the charged offense could not be given to the jury without disclosure of the uncharged misconduct. *State v. Avila*, 137 Idaho 410, 413, 49 P.3d 1260, 1263 (Ct. App. 2002). Even if facts show the commission of other crimes, I.R.E. 404(b) does not prohibit introducing facts that are inseparably connected to the charged conduct in order to communicate the full story or entire context of events. *Id*. (citing *State v. Izatt*, 96 Idaho 667, 670, 534 P.2d 1107, 1110 (1975)). However, in this case, the CI's statements regarding his past drug dealings with Naranjo were not inseparably connected to the charged conduct or necessary for a complete account of the

8

charged offense. We note, first, that the district court made no determination as to whether there was sufficient evidence to establish the prior bad acts as fact; the first part of the first tier of the *Grist* inquiry. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. In fact, the district court was given insufficient information to make such a determination. The prosecutor acknowledged that she did not know when the alleged prior drug purchases by the CI from Naranjo occurred, and provided no other specifics relative to these supposed events.

Second, it is highly doubtful that the evidence of prior drug purchases by the CI from Naranjo is relevant to any substantive facts of the case other than propensity. The CI's statement that he had previously purchased methamphetamine from Naranjo is claimed to be appropriate and relevant to show why the CI contacted Naranjo for the controlled buy. That the CI bought from Naranjo in the past, so he thought he could buy from him again, certainly sounds like propensity. To accept the State and the district court's position would be to hold that a confidential informant could always testify as to prior drug purchases merely to explain why the informant targeted the defendant in the charged offense. Some cases have found such testimony admissible. *Cf. United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982) (per curiam) (the witness's testimony of the prior bad act was inextricably intertwined with the crime charged because it explained why the witness believed he could buy a kilogram of cocaine from the defendant). Others courts have determined that similar testimony is not admissible. *Cf. State v. Parker*, 988 S.W.2d 93, 95-97 (Mo. Ct. App. 1999) (evidence of prior sales inadmissible propensity evidence). Other courts appear to require that the prior sales evidence be necessary to explain something more than merely why the informant would target the defendant. *Cf. Solis v. State*, 981 P.2d 28, 31 (Wyo. 1999) (prior sales not generally relevant, but may be admitted to rebut claims of defendant). We need not, in this case, determine whether such prior drug sales evidence is or is not generally relevant for contextual purposes.[3]

Evidence of prior drug sales by a defendant is highly prejudicial and, under the circumstances of this case, of low probative value for the contextual purposes for which it was admitted. In order to render a verdict in this case, the jury did not need to know why the CI targeted Naranjo for the controlled buy. The State argues that the CI's statements "did not tell

---

[3]     Even if the evidence was relevant, the State was required to provide timely notice or demonstrate good cause before the evidence could be properly admitted.

the jury anything that they did not already know or could not already infer from other evidence." If that is so, then the prior drug sales evidence was either completely irrelevant or cumulative.

We cannot say, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction. The evidence of prior drug sales was, under the circumstances, unnecessary to provide full context for the jury. In this case, the CI agreed to be a confidential informant in order to alleviate legal problems for his sister, yet, when he arrived for the controlled buy at Naranjo's house, his sister was inside the house. Although the CI was wired, the buy itself was apparently not audible. No officer monitoring the sale could see what transpired inside the house. The evidence was more prejudicial than probative. The State's failure to timely provide notice of the intent to use Rule 404(b) evidence was neither excused nor excusable. Naranjo was prejudiced in his ability to prepare and defend against the prior drug purchase evidence. As was the case in *Sheldon*, the district court initially determined that the evidence was inadmissible and then reversed course in the middle of trial, leaving Naranjo with even less ability to meet the evidence. Thus, Naranjo suffered substantial prejudice as a result of the admission of the other act evidence. We therefore conclude that admission of the evidence was not harmless error.[4]

### III.
### CONCLUSION

The error in admitting evidence that Naranjo had previously sold the CI methamphetamine was not harmless and requires reversal. Thus, the judgment of conviction is vacated and this matter remanded to the district court.

Judge LANSING and Judge GUTIERREZ **CONCUR.**

---

[4] The prejudicial admission of the prior sales evidence is determinative of this appeal and we need not address Naranjo's remaining claims.