IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30645-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL DAVID MATZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Daniel Matz appeals his conviction of multiple drug counts, arguing that his right to an expressly unanimous verdict was violated, an evidentiary error was made, he received ineffective assistance of counsel, and clerical errors were made in his judgment and sentence. The State concedes the clerical errors, which require remand for resentencing. We otherwise find no error or ineffective assistance of counsel and affirm his convictions.

FACTS AND PROCEDURAL BACKGROUND

Jeremy Regan overdosed on heroin and was facing drug charges. He told police officers for the city of Republic that he was interested in cooperating with law enforcement to avoid prosecution and they put him in touch with Deputy Talon Venturo of the Ferry County Sheriff's Office. Mr. Regan entered into a confidential informant cooperation agreement with Ferry County.

Mr. Regan offered the names of individuals from whom he could buy drugs, among them being Daniel Matz, from whom Mr. Regan said he could buy Dilaudid[1] or heroin. Once Mr. Regan's contract was finalized, Deputy Venturo gave him a cell phone and told him to call whenever he could purchase from one of the suppliers he had named.

Between January and June 2011, Mr. Regan contacted Deputy Venturo or his colleagues several times about buying drugs from Mr. Matz. On the first three occasions, he met with officers, was searched, was provided with prerecorded currency, and then proceeded to Mr. Matz's home to make a drug purchase that was preplanned with the officers. On January 8, he purchased three 8 mg Dilaudid and was given a clonazepam pill as a "bonus." Report of Proceedings (RP) at 335. On April 25, he purchased four Dilaudids and 2.1 grams of heroin. On June 7, he purchased one gram of heroin.

On June 16, Deputy Venturo learned from Mr. Regan that Mr. Matz had been on a drug run and had brought heroin back to his home. The deputy obtained and executed a search warrant that day. Officers encountered and detained 12 or 13 people on the property in the course of executing the warrant. A couple hundred hypodermic needles were scattered throughout the house, primarily in the living room. Smoking pipes and bent spoons with black residue were also present in the living room area.

In Mr. Matz's bedroom, police found and seized prescription pill bottles, some

---

[1] Hydromorphone hydrochloride.

2

labeled as dispensed to Mr. Matz but four of which were labeled as dispensed to others. The bottles contained different prescription pills, opium seeds, suspected marijuana, and empty capsules. Officers also found and seized 0.4 grams of crack cocaine, baggies containing amitrptyline pills and more empty capsules, a spoon with what appeared to be cocaine residue on it, four smoking devices, and a digital scale.

Mr. Matz and another man were detained inside the bedroom. Officers obtained a warrant to search Mr. Matz's person and found and seized 4 mg Dilaudid pills, 0.5 grams of methamphetamine, a loaded syringe, a baggie of suspected heroin labeled "1.2 grams," a 4.1 gram piece of suspected heroin, and nine individually wrapped bags that tested positive for heroin. RP at 475. They also seized his wallet, which contained $145 and lists of phone numbers, prescription costs, and people who apparently owed him money.

Mr. Matz was ultimately charged with delivery of hydromorphone and clonazepam on January 8 (counts I and II); delivery of heroin and hydromorphone on April 25 (counts III and IV); delivery of heroin on June 7 (count V); and, based on the June 16 search, possession with intent to manufacture or deliver heroin (count VI) and possession of morphine, methamphetamine, and cocaine (counts VII, VIII, and IX). He was charged on the basis of all of the controlled buys and the search with the unlawful use of a building for drug purposes from January 8 to June 16 (count X).

At trial, Mr. Matz conceded that he was guilty of the counts based on drugs in his possession on June 16 but denied all of the counts accusing him of dealing drugs. He

3

testified that he began using drugs while serving a tour of duty in Vietnam and became addicted. He took narcotics for pain and had a prescription for 4 mg hydromorphone. He denied ever selling his hydromorphone. He claimed to need more pain relief than his doctor would prescribe and used heroin as a substitute for the hydromorphone when his monthly prescription ran out.

He maintained that the heroin found when he was searched was for personal use and that he had purchased it the day before. He broke up the heroin and packaged it into 1.1 gram packages because his sampling determined that was the amount he needed to "get off." RP at 572. He claimed to keep his drugs in his pockets because they might otherwise be stolen by other drug users he allowed to stay in his home.

He denied selling drugs to Mr. Regan, whom he said he did not like. He testified that Mr. Regan had sold him drugs many years before, falsely passing them off as speed, and that he had confronted Mr. Regan about it so aggressively that Mr. Regan cried and wet himself. RP at 568-69. Mr. Matz's lawyer would later argue that Mr. Regan targeted Mr. Matz for revenge. The defense lawyer suggested in his opening statement that when Mr. Regan was at Mr. Matz's property and supposed to be engaged in controlled buys from Mr. Matz, he might have been buying the drugs from Julie Meyer, a good friend of Mr. Matz's and a heavy drug user who stayed in her motor home on his property.

According to Mr. Matz, the money list found in his wallet was of people to whom he had loaned money. He claimed that the prescription bottles belonging to others were

4

pills that they had left behind and that he retained in the event an owner returned for them. He testified the methamphetamine found in his pocket had been given to him by Ms. Meyer and he admitted trying it. He maintained that the cocaine found in his room was not his and he did not know it was there.

The defense theory was that Mr. Matz was a drug addict who possessed drugs for his personal use and who had acquaintances—also drug users—to whom he opened his home. But Mr. Matz contended that he did not deliver or intend to deliver drugs to anyone, nor did he knowingly allow his home to be used for unlawful drug purposes.

The jury found Mr. Matz guilty on all counts. At the sentencing hearing the court announced that it was sentencing Mr. Matz to a total of 100 months' confinement. The judgment and sentence reflects the 100-month total, but lists 120 months under the individual counts III, IV, V, and VI. Mr. Matz appeals.

ANALYSIS

I

Mr. Matz first contends that the trial court violated his right to a unanimous jury verdict because count VI alleged two alternative means by which he might have violated RCW 69.50.401(1)[2]—possession with the intent to *manufacture* or *deliver* heroin—yet it presented evidence sufficient to prove a violation by only one means.

---

[2] RCW 69.50.401(1) makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

"A fundamental protection accorded to a criminal defendant is that a jury of his peers must unanimously agree on guilt." *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007); WASH. CONST. art. I, § 21. When a crime may be committed by more than one means, the defendant does not have a right to a unanimous jury determination as to the means found by the jury, but in order to safeguard the defendant's constitutional right to a unanimous verdict, each means of committing the crime must be supported by substantial evidence. *Smith*, 159 Wn.2d at 783. If the evidence is sufficient to support each alternative means, "a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction because we infer that the jury rested its decision on a unanimous finding as to the means." *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994).

Mr. Matz denies the sufficiency of the evidence to establish his possession of heroin with the intent to manufacture it. "Manufacture" is defined by former RCW 69.50.101(p) (2010) to mean

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

The definition goes on to exclude activities incident to a practitioner's professional practice or for research, teaching, or chemical analysis purposes.

6

For the purpose of this appeal, the State assumes without agreeing that "possess with intent to manufacture or deliver" as used in RCW 69.50.401(1) describes alternative means to commit the crime, rather than a single crime. It is willing to make that assumption because, it contends, sufficient evidence supports either alternative. We therefore examine, first, whether there is sufficient evidence to establish an intent both to manufacture and to deliver heroin.

Mr. Matz concedes that substantial evidence supports conviction for possession with intent to deliver heroin. He also concedes that the evidence was likely sufficient for *manufacture*, given the fact that he had broken up and repackaged heroin that he acquired the day before the search. He argues, though, that because RCW 69.50.401(1) criminalizes both "manufacture" of a controlled substance and "intent to manufacture," the two must be distinct; he submits that the two crimes are differentiated based on the timing of the manufacture. He argues that the definition of "manufacture" requires completed manufacture, while intent to manufacture requires the specific intent to manufacture in the future.

His argument has support in case law. In the double jeopardy context, for instance, a conviction for unlawful possession of drugs with intent to manufacture has been held not to merge with a conviction for unlawful manufacture. Possession with intent to manufacture can be proved by a defendant's possession of precursor products, without the defendant's ever having begun the actual manufacturing process. *State v.*

*Gaworski*, 138 Wn. App. 141, 146, 156 P.3d 288 (2007); *State v. Brewer*, 148 Wn. App. 666, 675, 205 P.3d 900 (2009). In the context of determining whether two crimes constitute the same criminal conduct, the Washington Supreme Court has held that the crimes of delivery of a controlled substance and possession with intent to deliver are separate crimes because they involve different criminal intents: an intent to deliver at the present versus an intent to deliver in the future. *State v. Garza-Villarreal*, 123 Wn.2d 42, 864 P.2d 1378 (1993); *State v. Burns*, 114 Wn.2d 314, 319-20, 788 P.2d 531 (1990).

The differentiation does not point up an insufficiency in the evidence here, though. Mr. Matz argues that it does, because most of the heroin he had purchased had been repackaged into the nine 1.1 gram baggies by the time the evidence was seized and in cross-examination, the State suggested that it was those baggies that Mr. Matz intended to deliver, with the 4.1 gram piece of suspected heroin retained for his own use.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A defendant challenging the sufficiency of the evidence in a criminal case admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

"A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

8

Bare possession of a controlled substance is not enough to support conviction for an intent to manufacture or deliver; at least one other factor supporting an inference of intent must exist. *State v. McPherson*, 111 Wn. App. 747, 759, 46 P.3d 284 (2002). The defendant's intent must logically flow from the evidence. *Id.* Here, Mr. Matz admitted that he bought 33 grams of heroin the day before his arrest and he had only 13 grams remaining when arrested. A number of individuals detained at the home at the time of the search were found to be carrying loaded syringes and one—Carrie Leslie—testified that Mr. Matz provided her with the syringe of heroin found in her purse. Evidence was presented that there were more baggies and dozens of clean syringes in the home. Accordingly, while it is true that some manufacture—repackaging almost 10 grams into the nine baggies—was completed, there was evidence from which a reasonable jury could find that Mr. Matz intended to further prepare, convert, or repackage the heroin in his possession into more usable form.

Because the evidence was sufficient to prove the intent to both deliver and manufacture, we need not determine whether they are alternative means of committing the crime.

II

We next address Mr. Matz's assignment of error to an evidentiary ruling: the trial court overruled Mr. Matz's objection to the relevance of evidence that a young man,

Scott Weber, had overdosed at Mr. Matz's home several years before the time frame during which he was charged with unlawful use of his home for drug purposes.

In cross-examining Mr. Matz, the State asked him about an incident two or three years earlier in which police had responded to Mr. Weber's drug overdose at Mr. Matz's home. Deputy Venturo had been one of the responding officers. Mr. Matz's lawyer objected on relevance grounds, pointing out that "[t]his is way prior to any pertinent— pending charges here." RP at 585.

The defense objection was overruled. The State proceeded to touch on the overdose incident a couple of times in questioning Mr. Matz and then called Deputy Venturo for rebuttal testimony, in which the officer disagreed with Mr. Matz's testimony downplaying Mr. Weber's overdose.

The relevancy objection by the defense was addressed in a sidebar and the trial court later made a record outside the presence of the jury explaining its ruling:

> [T]his goes to the line of inquiry about the people that frequent[ed] Mr.
> Matz's home, and the possible drug use, and any involvement he might
> have had in that, and knowledge of it. And so I thought it was highly
> relevant. It is before the time period that's charged in count 10, but on the
> other hand I think it's highly relevant, and given the nature of this trial and
> the evidence that's before this jury about ongoing activity at the residence,
> then I don't see it as unusually prejudicial, but relevant to the state's case.

RP at 619-20.

Mr. Matz argues that the ruling was wrong because knowingly allowing another to *use* drugs in a building is not a crime and the evidence did not establish that Mr. Matz

10

had supplied the drugs to Mr. Weber. Accordingly, he argues, "The evidence therefore did not make it more probable that Matz knowingly made his residence available for the purpose of providing drugs during the charging period." Br. of Appellant at 36.

We will not disturb a trial court's evidentiary decisions absent an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A trial court abuses its discretion when its evidentiary ruling is based on untenable grounds or reasons. *Id.*

A person commits the crime of unlawful use of a building for drug purposes when he or she "knowingly . . . make[s] available for use . . . the building . . . for the purpose of unlawfully manufacturing, delivering, selling, storing, or giving away any controlled substance." RCW 69.53.010(1). A person acts "knowingly" when he or she is aware or reasonably should be aware that existing facts constitute an offense. RCW 9A.08.010(1)(b)(i), (ii). "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. ER 401.

The requirement that a person commit the crime "knowingly" makes relevant information that would have drawn the person's attention to the fact that controlled substance use was taking place in his or her building even before the charging period. The relevance requirement is not a high hurdle and minimal relevancy is all that ER 402 requires. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 670, 230 P.3d 583 (2010). If not

11

remote or interrupted, the activity in a prior period is circumstantial evidence of continuing knowledge on the part of a defendant. It is true that standing alone, the knowledge of drug activity in that prior period does not establish Mr. Matz's guilt. But it was fairly viewed by the trial court as having some tendency to make it more probable that Mr. Matz had knowledge that drugs were being delivered, sold, stored, or given away in his home.

As the State points out, Mr. Matz also opened the door to this evidence with his opening statement and testimony. He and his lawyer characterized his home as a "'safe house'" and a "'harbor from the storm'"; he testified that he did not want people using illegal drugs at his house and that he did not sell drugs because he would not be able to get rid of addicts if he did. Br. of Resp't at 11. His own testimony and argument about use of his home was generalized rather than limited to the charging period and made evidence of the overdose relevant in rebuttal to his professed unawareness of illegal drug activities. *See State v. Christian*, 26 Wn. App. 542, 550, 613 P.2d 1199 (1980) (testimony about amount of drugs was made relevant by the defendant's claim that he was unaware of them), *aff'd*, 95 Wn.2d 655, 628 P.2d 806 (1981). Mr. Matz has not demonstrated that the trial court abused its discretion in admitting the evidence.

III

Mr. Matz finally argues that his trial lawyer was ineffective in three respects: by requesting that Deputy Venturo's affidavit for the search warrant be admitted in evidence,

12

failing to object to evidence that Mr. Matz sold drugs before the charging period, and failing to object to evidence of the Scott Weber overdose on ER 404(b) grounds.

The Sixth Amendment and article I, section 22 of the Washington State Constitution guarantee the right to counsel, but more than the mere presence of an attorney is required. *State v. Hawkins*, 157 Wn. App. 739, 747, 238 P.3d 1226 (2010). The attorney must perform to the standards of the profession. *Id.* A claim for ineffective assistance presents a mixed question of law and fact, which we review de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006); *State v. Cham*, 165 Wn. App. 438, 445, 267 P.3d 528 (2011), *modified on remand*, noted at 172 Wn. App. 1002 (2012).

To establish a claim, the defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). In evaluating claims for ineffectiveness, courts are highly deferential to counsel's decisions and there is a strong presumption that counsel performed adequately. *Strickland*, 466 U.S. at 689-91. Strategic and tactical decisions are not grounds for error. *Id.*; *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). If a party fails to satisfy the deficient representation element, a reviewing court need not consider the prejudice prong. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

13

*Search Warrant Affidavit.* Mr. Matz first claims his lawyer provided ineffective assistance in asking that Deputy Venturo's search warrant affidavit be admitted as foundation for the warrant itself. He argues that the affidavit was excludable as hearsay and proved to be prejudicial, reinforcing the State's case as to count III (delivery of heroin on April 25).

The affidavit was admitted during the testimony of the State's first witness, Deputy Venturo. The State offered the search warrant itself and Mr. Matz's lawyer took the opportunity to ask that the affidavit be admitted as foundation, which was agreeable to the State. The affidavit provided a history of the deputy's investigation and use of Mr. Regan as a confidential informant up to the point of the search. In cross-examination and in closing argument, Mr. Matz's lawyer would use the facts set forth in the affidavit to challenge the investigation as incomplete and the deputy's handling of Mr. Regan as sloppy.

The affidavit later proved helpful to the State, but in a way that does not appear to have been foreseen by anyone. When called and questioned on the second day of trial, Mr. Regan testified that he had not purchased heroin from Mr. Matz on April 25 as charged in count III. This appears from the transcript to have come as a surprise to both the prosecutor and to Mr. Matz's lawyer.[3]

---

[3] If Mr. Matz's lawyer had foreseen that Mr. Regan would not support the State on count III, he surely would have approached the issue more aggressively than he initially

Mr. Matz relied on Mr. Regan's failure to support the State's case on count III by moving to dismiss it at the close of the State's case. The court denied the motion, finding sufficient evidence in the officers' testimony that they searched Mr. Regan before and after the April 25 buy, and that he had gone into the house without heroin and returned with the 2.1 gram piece along with Dilaudid pills. The State was also able to rely on the search warrant affidavit, which reported Mr. Regan's debriefing after the April 25 buy, in which he told officers he had purchased the heroin.

Mr. Matz focuses on this use of the affidavit to the State's advantage in arguing that his lawyer was ineffective, ignoring the implication of the record that no one foresaw that Mr. Regan's testimony would not support the State on count III. If Mr. Matz's lawyer had a legitimate tactical reason for seeking admission of the affidavit, an

---

did. After Mr. Regan denied having purchased heroin on April 25 in his direct examination, Mr. Matz's lawyer approached the matter tentatively:

> [Q]   Now, April 25th—that would have been the second buy—okay? You indicated you don't know if you got any heroin from Mr. Matz?
>
> A   I didn't get any heroin from him.
>
> Q   So when you showed up with the [confidential informant] to the— Venturo, and I think Olson, (inaudible).
>
> A   No, sir. That would be on the third buy, in June.
>
> Q   Okay. Well, the state has charged Mr. Matz with delivery of heroin on the 25th of April—unless I'm mistaken, and I don't think I am—.
>
> A   I'm positive I got Dilaudid, sir.
>
> Q   All right.
>
> A   And we did listen to the recording.
>
> Q   Yeah, I know. I know we did. Hm. Okay.

RP at 367-68.

unforeseen development that later made the evidence useful to the State does not render his representation deficient. In evaluating counsel's performance, "courts must make 'every effort . . . to eliminate the distorting effects of hindsight.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 44, 296 P.3d 872 (2013) (alteration in original) (quoting *Strickland*, 466 U.S. at 689).

The affidavit could serve a legitimate tactical use, contrary to Mr. Matz's argument that there was no conceivable strategic reason for offering it. As acknowledged by the State, "By admitting the search warrant affidavit, the defense established what the police investigation consisted of—in other words, a jury could conclude that if it was done and it was important, it would be in that document. That gave the defense the opportunity to poke holes in the investigation and show, and argue, what was NOT done." Br. of Resp't at 6. Given the overwhelming evidence of drug possession and drug use in his home, Mr. Matz's best strategy was to challenge the charges that he was dealing drugs. He had to attack Mr. Regan and the reliability of the controlled buys. The affidavit was a legitimate strategic target for that attack.

*Prior Drug Sales.* During Mr. Regan's direct examination, the prosecutor established that in entering into a cooperation agreement with Ferry County, Mr. Regan told officers that one of the people he could buy drugs from was Mr. Matz. The prosecutor asked if he had purchased drugs from Mr. Matz in the past; the defense

16

objected on grounds of inadmissible misconduct and the court sustained the objection.

The prosecutor then asked:

Q      What was it that you told the officers you believed you could buy
       from Mr. Matz?
A      Dilaudids or heroin.
Q      And did you in fact attempt to buy such things from him?
A      Yes, sir.
Q      Why did you believe you could buy those substances from him?
A      Because he always had—I mean, he had prescription for them. *He's
       well known for selling them.*

RP at 332-33 (emphasis added). Counsel for Mr. Matz did not object to the last question

or move to strike the response. Mr. Matz argues that his lawyer should have objected

again, based on ER 404(b).

Where the defendant claims ineffective assistance based on counsel's failure to

challenge the admission of evidence, the defendant must show an absence of legitimate

strategic or tactical reasons supporting the challenged conduct, that an objection to the

evidence would likely have been sustained, and that the result of the trial would have

been different had the evidence not been admitted. *State v. Saunders*, 91 Wn. App. 575,

578, 958 P.2d 364 (1998); *State v. Hendrickson*, 129 Wn.2d 61, 78-79, 917 P.2d 563

(1996). No ineffectiveness will be found if the challenge to admissibility of evidence

would have failed. *Nichols*, 161 Wn.2d at 14-15.

ER 404(b) prohibits a court from admitting evidence of prior bad acts to show

propensity to commit a crime, but such evidence may be admitted for other purposes. The

rule identifies "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" as other purposes for which the evidence may be admitted, but the list is not exhaustive. ER 404(b); *State v. Grant*, 83 Wn. App. 98, 105, 920 P.2d 609 (1996) (citing *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995)).

The State argues that Mr. Regan's testimony as to Mr. Matz's alleged reputation for drug dealing was admissible under ER 404(b) to prove Mr. Regan's basis of knowledge for identifying him to police, and that his identification was based on what he knew about Mr. Matz's drug dealing, not personal bias. In other words, Mr. Regan's *reason for identifying Mr. Matz* was Mr. Matz's propensity to commit a crime. We find conflicting authority from other jurisdictions. *See State v. Naranjo*, 152 Idaho 134, 141, 267 P.3d 721 (2011) (rejecting trial court's "res gestae" rationale for admitting evidence of a confidential informant's prior dealings with a target, but recognizing contrary authority); *United States v. Costa*, 691 F.2d 1358 (11th Cir. 1982) (treating the witness's testimony as to how he came to know defendant as a dealer in cocaine as intrinsic); *Solis v. State*, 981 P.2d 28, 31 (Wyo. 1999) (treated as admissible to rebut a defendant's conflicting explanation of controlled buy).

Certainly a confidential informant should not always be permitted to testify as to prior drug purchase merely to explain why the informant targeted the defendant in the charged offense. The State's most viable argument for admission here would have been to rebut a material assertion by Mr. Matz: that Mr. Regan had identified him as a supplier to

18

exact revenge for a prior humiliation. Even that purpose would have required a full ER

404(b) analysis, including balancing the relevance of the evidence against undue prejudice.

We need not decide in this case whether the evidence was admissible, however,

because Mr. Matz does not show prejudice. A showing of prejudice is made when there

is a reasonable probability that, but for counsel's errors, the result of the trial could have

been different. *Hendrickson*, 129 Wn.2d at 78. It was conceded that Mr. Matz was

addicted to opiods, that he shared drugs with others, and that he possessed a large amount

of drugs at the time of the search. He disputed only the delivery, manufacture, and

unlawful use of building charges. In addition to the testimony of Mr. Regan, the State

presented the testimony of officers who supervised the controlled buys and it played a

recording from one controlled buy during which Mr. Regan had worn a wire. It

presented the testimony of officers who participated in searching the home and in

detaining and arresting others who were present. It presented the testimony of two

women who had been present at the home and were arrested. One of the women, Ms.

Meyer, testified that Mr. Matz sold prescription pills, usually to get heroin for himself,

and that he might have been selling heroin. Ms. Leslie testified that Mr. Matz provided

her with heroin and gave heroin to others within the charging period. Mr. Matz

demonstrates no likelihood that the outcome of the trial would have been different if

defense counsel had objected and moved to strike Mr. Regan's statement that he was well

known for selling heroin and Dilaudid.

19

*Failure to Object on ER 404(b) Grounds to Evidence of Overdose.* Finally, Mr. Matz argues that his lawyer was ineffective in failing to object to the evidence of Mr. Weber's overdose several years before the charging period, on ER 404(b) grounds. He argues that "[e]vidence that Matz allowed a young man to use drugs and overdose in his house is evidence of prior misconduct" and "[a]t the very least, a juror would view Matz's involvement in providing a haven for the man to put his life in danger as disgraceful." Br. of Appellant at 37. As addressed above, however, the evidence was relevant to Mr. Matz's knowledge, an explicitly permitted purpose for such evidence under ER 404(b). Mr. Matz suggests that the balancing required of the court by ER 403 was likely to come out in his favor but we disagree; where guilty knowledge was a required element of the crime, the trial court was likely to find that the probative value of Mr. Matz's knowledge of a drug overdose at his home outweighed its prejudice.[4]

## IV

Finally, Mr. Matz argues that the judgment and sentence erroneously lists 120 months' confinement for counts III through VI, contrary to the sentence announced by the court, and that it incorrectly lists count II, a class C felony, as a class B felony. The State concedes these clerical errors.

---

[4] Mr. Matz also argues that cumulative error deprived him of a fair trial. Having found only one arguable but nonprejudicial failure to object, we need not address cumulative error.

No. 30645-3-III
*State v. Matz*

The case should be remanded to the trial court to amend Mr. Matz's total sentence to 100 months and list count II as a class C felony.

We affirm Mr. Matz's convictions and remand for resentencing in light of the clerical errors.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Brown, J.